SMITH et al. v. CITY OF SHAKOPEE.[1]

(Circuit Court of Appeals, Eighth Circuit. October 30, 1899.)

No. 1,225.

JUDICIAL NOTICE—REGULATIONS OF LIGHTHOUSE BOARD.
    Courts of admiralty will not take judicial notice of the regulations of the lighthouse board.

Appeal from the District Court of the United States for the District of Minnesota.

John E. Stryker, for appellants.
Charles G. Hinds (H. J. Peck, on the brief), for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This is an admiralty case which originated in the state of Minnesota, and grew out of injuries to the

[1] Motion for rehearing granted.

steamer Daisy that were occasioned by running into the draw of a bridge across the Minnesota river, which was constructed by the city of Shakopee, the respondent below and the appellee here. William C. Smith and Lora Smith, the libelants below and the appellants here, alleged in their libel, in substance, that they were the owners of the steamer Daisy, and that on June 15, 1896, at the hour of 2 o'clock a. m., as the said steamer was proceeding down the Minnesota river with an excursion party from St. Paul, which had been spending the day at Chaska, she ran into the draw of the aforesaid bridge, and carried away her smokestack and injured her pilot house and some of her upper works. It was alleged that the collision in question, and the consequent injuries to the steamer, were occasioned because the lights on said bridge were at the time insufficient to disclose the position of the draw, and because the draw was carelessly and negligently opened by the bridge tender, who was in the employ of the city of Shakopee, and because the lights on the draw were so negligently displayed as to deceive the pilot and master as to the position of the draw. The trial court found to the contrary of these allegations, and dismissed the libel.

One of the contentions on the part of the appellants is that on the occasion of the collision the city of Shakopee was negligent in not placing on the bridge such lights as it was required to place thereon by the regulations that had been prescribed by the lighthouse board. The alleged rules and regulations of said board were not offered in evidence, however, and they are not contained in the record, for which reasons they cannot be noticed or regarded as prescribing a standard of duty for the defendant city different in degree from its common-law duty. The courts will not take judicial notice of the regulations of the lighthouse board, or other similar boards, when they are not offered in evidence, as was held substantially in The E. A. Packer, 140 U. S. 360, 367, 11 Sup. Ct. 794, 35 L. Ed. 453, also in The Clara, 14 U. S. App. 346, 5 C. C. A. 390, 55 Fed. 1021. The case in hand must be considered, therefore, without reference to the alleged fault of the city in failing to comply with directions which may have been given by the lighthouse board relative to the lighting of bridges across navigable streams.

As the case is one, then, which involves an application of ordinary rules of law, and turns principally upon conclusions of fact to be drawn from the testimony, it will suffice to state the conclusions that have been reached by the court after an attentive reading of the testimony. There were enough lights on the bridge to indicate where the draw was located, and to advise the pilot how the steamer should approach to pass through the draw safely. The pilot approached the bridge at the proper place to enter the draw. He was not deceived as to its location, and would have passed through in safety but for the fact that the draw was not fully swung, so as to afford an unobstructed passage, when the attempt was made. The proximate cause of the collision seems to have been that the pilot attempted to make the passage before he was assured that the draw was fully opened. If there had been a dozen more lights on the bridge in addition to the four or five lights which appear to have been in place, it is not appar-

ent that they would have aided the pilot to see if the draw was fully swung, if he was not aware at the time, as others on board of the steamer appear to have been, that it was only partially open. Immediately before the accident occurred the steamer had landed at Shakopee, a short distance above the bridge, to discharge some passengers. While the steamer lay at that point is could be seen that the draw was not open, and that the bridge tender was making due preparations to open it. Passengers who were on board the steamer in a no more eligible position than the pilot or master saw that such was the condition of affairs when the steamer backed out into the stream after discharging the passengers for the purpose of running through the draw, and we have no doubt that the pilot and master could have seen that the draw was not then fully open if they had been duly observant. Now, it may be that, when the steamer backed out into the middle of the stream, it was somewhat difficult from that point to see the swinging span, by reason of a slight mist or haze which usually hangs over a river at night, and may have obstructed the view of the span to some extent. It is conceded, however, that from that point the piers and abutments on which the draw rested were clearly visible, and that no difficulty was experienced in fixing the exact location of the draw. The sole difficulty which the pilot seems to have experienced was in not being able to see clearly from his position in the middle of the stream whether the draw was fully swung or only partially swung, and we are not able to say that additional lights would have been of any service under the conditions which then prevailed.

Besides, the evidence does not satisfy us that there was unreasonable delay in opening the draw on the night of the accident. At that time and previously there was very little navigation on the Minnesota river. Steamers passed up and down the river only at rare intervals, and usually by daylight, whereas the steamer in question made the trip down the river at night and at an unusual hour. Under these circumstances, it would be unreasonable to require the defendant city to exercise the same degree of expedition in opening the draw which might be required if boats passed the bridge frequently and at all hours of the day and night. Neither are we able to find that the lights on the draw were improperly placed, since one light· seems to have been on one end of the draw towards the steamer, and the others on either side of the passage. In view of these conclusions, the city does not seem to have been guilty of any fault which can be said to have rendered it legally responsible for the injuries occasioned by the collision. The master and the pilot, in their haste to pass through the draw, appear to have made the attempt before it was fully swung, without taking the trouble to ascertain, as they might have done, if the passage was clear, and by so doing the steamer came in contact, not with the piers or abutments, but with the draw itself while it was in motion. We are of opinion, therefore, that the decree dismissing the libel was right, and it is accordingly affirmed.