SMITH et al. v. CITY OF SHAKOPEE.

(Circuit Court of Appeals, Eighth Circuit. July 2, 1900.)

No. 1,225.

1. EVIDENCE—JUDICIAL NOTICE—REGULATIONS OF LIGHTHOUSE BOARD.

The courts of admiralty will take judicial notice of the regulations of the lighthouse board, made upon the authority of an act of congress, and prescribing the number and kinds of lights to be placed on the draws of bridges across navigable streams, although they are neither pleaded nor offered in evidence.

2. NEGLIGENCE—LIGHTS ON DRAWBRIDGE—REQUIREMENTS OF STATUTE.

Under the regulations of the lighthouse board, requiring the suspension of lights on drawbridges, so that three red lights will be seen up and down stream when the draw is closed, and three green lights when it is open, the failure of a city to maintain such lights on a drawbridge erected by it is such negligence as will render it liable for damages to a steamer resulting from such omission.

3. SAME—CONTRIBUTORY NEGLIGENCE—DAMAGES.

Where a city is negligent in failing to maintain the lights required by law on a drawbridge, and the pilot and captain of a steamer are also negligent in attempting to take their boat through the draw before they are assured that it is fully swung, the damages sustained should be divided.

Appeal from the District Court of the United States for the District of Minnesota.

John E. Stryker, for appellants.
Charles G. Hinds, City Atty., for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. In our former opinion in this case (97 Fed. 974, 38 C. C. A. 617), we held that we could not take judicial notice of the regulations of the lighthouse board prescribing the number and kinds of lights to be placed on the draws of bridges across navigable streams, because the regulations were neither pleaded nor offered in evidence, so far as the record discloses. In support of that view we cited the following cases: The E. A. Packer, 140 U. S. 360, 367, 11 Sup. Ct. 794, 35 L. Ed. 453, and The Clara, 14 U. S. App. 346, 5 C. C. A. 390, 55 Fed. 1021. Our attention was called by a petition for a rehearing to certain other cases wherein a different doctrine had been announced, as it was claimed; and on the strength of such references a rehearing was granted, and the case has been reargued.

In the case of Caha v. U. S., 152 U. S. 211, 221, 222, 14 Sup. Ct. 517, 38 L. Ed. 419, certain rules and regulations which had been prescribed by the interior department in respect to contests before the land office were not formally offered in evidence; and it was urged that, because of such omission, judicial notice of the same could not be taken. The court said with reference to this contention:

"We are of opinion that there was no necessity for a formal introduction in evidence of such rules and regulations. They are matters of which the courts of the United States take judicial notice. Questions of a kindred nature have been frequently presented, and it may be laid down as a general rule deducible from the cases that wherever, by the express language of any act of congress, power is intrusted to either of the principal departments of government to prescribe rules and regulations for the transaction of business in which the public is interested, and in respect to which they have a right to participate, and by which they are controlled, the rules and regulations prescribed in pursuance of such authority become a mass of that body of public records of which the courts take judicial notice."

Reference is then made to the following cases: U. S. v. Teschmaker. 22 How. 392, 405, 16 L. Ed. 353; Romero v. U. S., 1 Wall. 721, 17 L. Ed. 627; Armstrong v. U. S., 13 Wall. 154, 20 L. Ed. 614; Jones v. U. S., 137 U. S. 202, 11 Sup. Ct. 80, 34 L. Ed. 691; Knight v. Association, 142 U. S. 161, 169, 12 Sup. Ct. 258, 35 L. Ed. 974; Jenkins v. Collard, 145 U. S. 546, 12 Sup. Ct. 868, 36 L. Ed. 812. The rule above stated in Caha v. U. S. was referred to with approval in Re Kollock, 165 U. S. 526, 534, 17 Sup. Ct. 444, 41 L. Ed. 813. See, also, U. S. v. Eaton, 144 U. S. 677, 12 Sup. Ct. 764, 36 L. Ed. 591, and Wilkins v. U. S. (D. C.) 96 Fed. 835, 841; also, the recent decision of this court in Grady v. U. S., 39 C. C. A. 42, 98 Fed. 238. We conclude, therefore, that we erred in our former opinion in refusing to take judicial notice of the regulations of the lighthouse board, although they were neither pleaded nor offered in evidence. The regulations of the lighthouse board which are invoked in the present case were prescribed, as it seems, by the board pursuant to authority expressly conferred on that body by an act of congress approved August 7, 1882 (22 Stat. 309, c. 433). It is our duty, therefore, to take judicial notice of such regulations as the board may have made for the lighting of the draws of

bridges across navigable streams pursuant to the authority conferred by the aforesaid statute. Such regulations, it seems, are as follows:

"Every low bridge with a double draw shall have a red light on each end of the draw piers. Each pivot pier shall have one red light on each side where the pier is crossed by the axis of the bridge, and placed below the floor level of the same. In order to make it distinct whether the draw is open or closed, there shall be placed three square lanterns on the top of the draw-span, all of them raised fifteen feet above the top of the draw. These lanterns are to show green along the axis of the draw, and red at right angles to the axis. The result will be that when the draw is shut there will be shown up and down stream three high red lights above the permanent low lights; when open, three green lights will be seen in line up and down stream, with the low permanent red lights showing the width of the openings. All of these lights shall be permanent."

The bridge across the Minnesota river at Shakopee, where the accident occurred, was not provided with such lights as the regulations aforesaid require, for which reason it must be adjudged that the city was at fault, and did not exercise that reasonable degree of care and diligence in lighting the draw of the bridge which the law requires of the owner of a drawbridge across a navigable stream.

In our former decision we said, in substance, that the proximate or efficient cause of the collision with the bridge seems to have been that the pilot attempted to pass through the draw before he was assured that it was fully opened. This conclusion was induced, however, by the finding that the bridge was provided with adequate lights, considering its location and the amount of navigation on the Minnesota river, to meet the requirements of the common law. The same conclusion cannot be formed on the present occasion, since it was the duty of the city to provide such lights as are required by the regulations of the lighthouse board, and, if such lights had been provided, the position of the three green lights would have shown at a glance when the draw was fully swung. The city was at fault, therefore, in not furnishing the requisite lights. On the other hand, we think that the pilot and the captain, one or both of them, did not exercise that degree of care and circumspection which they should have exercised, in attempting to pass through the draw before they were assured that it was fully swung. Even if the city was at fault in failing to provide the requisite lights, those in charge of the steamer had no right to attempt to pass through the bridge until they had taken the precaution to ascertain that the passage could be made in safety. The conditions were such that the steamer could have been held at a safe distance from the bridge until the men who were in charge of the draw had advised the pilot that the draw was fully swung and ready for the passage of the steamer; and such action, we think, should have been taken. The case is one, in our judgment, where the accident was occasioned by the concurring negligence of both parties, and in such cases the admiralty rule is to divide the damages. The Max Morris, 137 U. S. 1, 9, 11 Sup. Ct. 29, 34 L. Ed. 586; The Britannia, 153 U. S. 130, 144, 14 Sup. Ct. 795, 38 L. Ed. 660; The Lisbonense, 53 Fed. 293, 3 C. C. A. 539. There is some uncertainty in the proof as to the true amount of the damages that were occasioned by the collision, but we are satisfied by an investigation of the evidence on that point that they did not exceed $1,000.

The decree of the district court directing that the libel be dismissed is reversed, and the case is remanded to that court with directions to vacate said decree, and in lieu thereof to enter a decree in favor of the libelants for the sum of $500 and costs.