---

Ex parte LAIR.

(District Court, D. Kansas, First Division. March 30, 1910.)

No. 1,091.

1. CRIMINAL LAW (§ 4*)—IMMIGRANTS—KEEPING FOR IMMORAL PURPOSES—POWER OF CONGRESS TO REGULATE.

Act Cong. Feb. 20, 1907, c. 1134, § 3, 34 Stat. 899 (U. S. Comp. St. Supp. 1909, p. 450), in so far as it provides for the criminal punishment of the mere keeping, maintaining, supporting, or harboring an alien woman within three years after entry for purpose of prostitution, is unconstitutional; such offense being within the police power of the state and not subject to congressional regulation.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 4.*]

2. ALIENS (§ 40*)—IMPORTATION—PROSTITUTION—STATUTES—REPEAL.

Act Cong. March 3, 1903, c. 1012, § 3, 32 Stat. 1214, in so far as it placed no limitation on the length of the holding of a female alien for prostitution for which the holder might be prosecuted, was repealed by Act, Feb. 20, 1907, c. 1134, § 43, 34 Stat. 911 (U. S. Comp. St. Supp. p. 469), requiring that the offense of holding must have been committed within three years after the alien entered the United States.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 40.*]

3. ALIENS (§ 59*)—HARBORING—INDICTMENT—CONSTRUCTION.

An indictment charged that petitioner, in connection with another at Chicago in the Eastern division of the Northern district of Illinois, unlawfully, etc., imported into the United States for prostitution and unlawfully, etc., did hold from January 1, 1906, until July 15, 1907, pursuant to such illegal importation, in a house of prostitution in Chicago, for the purpose of prostitution, an alien named P., then a citizen of

France, within three years after her entry, and that she came to and entered the United States within three years prior thereto. *Held*, that such allegation charged the offense of holding and harboring a female alien for the forbidden purpose within three years after entry, and not her illegal importation for such purpose.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 59.*]

**4. CRIMINAL LAW (§ 113*)—VENUE.**

The offense of importing a female alien for prostitution in violation of Act Cong. Feb. 20, 1907, c. 1134, § 3, 34 Stat. 899 (U. S. Comp. St. Supp. 1909, p. 450), is committed and is complete the moment the immigrant is landed in the United States at which point the offense is triable, under Const. art. 3, § 2, cl. 3, declaring that the trial of all crimes except cases of impeachment shall be held in the state where the crime has been committed and the sixth amendment, declaring that accused shall enjoy the right to a speedy and public trial in the state and district wherein the crime has been committed.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 113.*]

**5. CRIMINAL LAW (§ 304*)—JUDICIAL NOTICE—DIVISION OF COUNTRY—GEOGRAPHICAL LOCATION.**

United States courts take judicial notice of the territorial extent of the general government, the local divisions of the country, its geography, its natural water courses, and their boundaries, and the ports and waters of the United States in which the tide ebbs and flows and of the boundaries of the several states and judicial districts.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 304.*]

**6. CRIMINAL LAW (§ 304*)—JUDICIAL NOTICE.**

A federal court will take judicial notice that a seagoing vessel carrying immigrants from France to the United States did not find a port of entry within the Northern district of Illinois.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 304.*]

**7. CRIMINAL LAW (§ 113*)—VENUE.**

Under Const. U. S. art. 3, § 2, cl. 3, and Const. Amend. 6, requiring all crimes to be prosecuted in the state or district where committed, a federal court within the Northern district of Illinois had no jurisdiction to try accused for importing a female alien, a citizen of the Republic of France, to the United States for prostitution; the offense being complete at the Atlantic seaport where the alien first landed and entered the United States.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 113.*]

**8. HABEAS CORPUS (§ 27*)—SCOPE OF WRIT—INVALID CONVICTION—JURISDICTION.**

Where relator's conviction was void for the court's lack of jurisdiction over the subject-matter, habeas corpus was the proper remedy to obtain his discharge.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 22; Dec. Dig. § 27.*]

Petition for a writ of habeas corpus by Henry Lair.   Writ granted. Petitioner discharged.

J. D. Brown and Marshall Woodworth, for petitioner.
J. S. West, Asst. U. S. Atty.

PHILIPS, District Judge.   The petitioner was indicted in the United States District Court for the Northern District of Illinois, in December, 1908, for violating the "Act of Congress prohibiting the importation into the United States of any alien woman or girl for the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

purpose of prostitution, and for holding such alien for any such purpose in pursuance of such illegal importation," etc.

The first count of the indictment charges, in substance, that the petitioner, under various aliases, in connection with one Mrs. Henry Lair, at Chicago, in the Eastern division of the Northern district of Illinois, unlawfully, willfully, and knowingly imported into the United States for the purpose of prostitution, and unlawfully, willfully, and knowingly did hold, to wit, from the 1st day of January, 1906, until the 15th day of July, 1907, in pursuance of such illegal importation, in their certain house of prostitution there situate, etc., in said city of Chicago, for the purpose of prostitution, a certain alien woman named Marie Peuroy, who was then a citizen of the Republic of France, within three years after she had entered the said United States, and that she came to and entered the said United States within three years prior thereto, against the peace and dignity, etc.

The second count charges that the petitioner in the year 1906, and from that time until the 15th day of July, 1907, at Chicago, in said district, unlawfully, knowingly, and willfully held for the purposes of prostitution, in pursuance of an illegal importation for the purpose of prostitution, in the house of prostitution at the designated street in said city, the said Marie Peuroy, who was then a citizen of the Republic of France, within three years after she had entered the said United States, and that she came to and entered said United States within three years prior thereto, etc.

The third count makes practically the same charge as the last respecting the taking and holding of said alien in the house of prostitution at Chicago; and further charges that at the time of the illegal importation and holding petitioner well knew that she was an alien woman, and a citizen of the Republic of France, and had entered the United States within three years prior thereto, etc.

The fourth count contains practically the same charge as the two preceding counts, except that it fixes the date between the 1st day of July, 1907, until the 15th day of July, 1907, and charges that they maintained, controlled, supported, and harbored in a certain house of prostitution in said city of Chicago the said Marie Peuroy, a citizen of the Republic of France, and that she came to and entered the United States within three years prior thereto, etc.

To this indictment the petitioner entered the plea of nolo contendere. Whereupon the court, as the minutes therein recite, heard the evidence on the part of the United States, and found the defendant guilty as charged in the indictment, and on the 1st day of February, 1909, the court imposed a general sentence upon all four of said counts of the indictment, sentencing him to two years' imprisonment in the United States penitentiary at Ft. Leavenworth, Kan. (and to pay a fine of $2,500), where he has been confined in execution of said sentence since the 12th day of February, 1909. The petition for discharge under the writ of habeas corpus is predicated of the contention that said judgment was void, for the reasons that the act of Congress upon which the indictment was predicated is invalid under the Constitution of the United States, and because the District Court of the United States for the Northern District of Illinois had no jurisdiction over the subject-

matter. It is conceded on the part of the United States attorney, representing the government, that, in so far as the last three counts of the indictment are concerned, the judgment or sentence is invalid and void, as held by the Supreme Court in the cases of Keller v. United States and Ullman v. United States, 213 U. S. 138, 29 Sup. Ct. 470, 53 L. Ed. 737, for the reason that the offense against public morals, for holding a person in a house of prostitution, pertains to the police power of the state, and it is not within the competency of Congress to regulate or prohibit the same.

The judgment is sought to be maintained by the United States attorney on the first count of the indictment, claimed to be valid, invoking the well-recognized rule of law:

"That in any criminal case a general verdict and judgment on an indictment or information containing several counts cannot be reversed on error, if any one of the counts is good and warrants the judgment, because, in the absence of anything in the record to show the contrary, the presumption of law is that the court awarded sentence on the good count only." Claassen v. United States, 142 U. S. 140, 12 Sup. Ct. 169, 35 L. Ed. 966.

Waiving any discussion as to whether this rule applies to the instance of joining in a single count two distinct offenses contained in separate clauses of the same section of the statute, one of which is invalid, as if never written, and the other is valid, on which only a general judgment is rendered, and when the evidence that would be sufficient to sustain the one cause would wholly fail to support the other, we will proceed to determine whether or not this judgment is absolutely void.

From the indorsement on the back of the indictment it appears that it was predicated of the act of March 3, 1903, and the act of February 20, 1907. Section 3 of the former act (Act March 3, 1903, c. 1012, 32 Stat. 1214) is as follows:

"That the importation into the United States of any woman or girl for the purposes of prostitution is hereby forbidden; and whoever shall import or attempt to import any woman or girl into the United States for the purposes of prostitution, or shall hold or attempt to hold, any woman or girl for such purposes in pursuance of such illegal importation shall be deemed guilty of a felony, and, on conviction thereof, shall be imprisoned not less than one nor more than five years and pay a fine not exceeding five thousand dollars."

The corresponding section of the act of February 20, 1907 (34 Stat. 899, c. 1134 [U. S. Comp. St. Supp. 1909, p. 450]), is as follows:

"That the importation into the United States of any alien woman or girl for the purpose of prostitution, or for any other immoral purpose, is hereby forbidden; and whoever shall, directly or indirectly, import, or attempt to import, into the United States, any alien woman or girl for the purpose of prostitution, or for any other immoral purpose, or whoever shall hold or attempt to hold any alien woman or girl for any such purpose in pursuance of such illegal importation, or whoever shall keep, maintain, control, support, or harbor in any house or other place, for the purpose of prostitution, or for any other immoral purpose, any alien woman or girl, within three years after she shall have entered the United States, shall, in every such case, be deemed guilty of a felony, and on conviction thereof be imprisoned not more than five years and pay a fine of not more than five thousand dollars; and any alien woman or girl who shall be found an inmate of a house of prostitution or practicing prostitution, at any time within three years after she shall

have entered the United States, shall be deemed to be unlawfully within the United States and shall be deported as provided by sections twenty and twenty-one of this act."

By section 43 of the latter act the act of March 3, 1903, except section 34 thereof (which might properly be designated as "alien" to the title and purposes of the act, prohibiting the sale of intoxicating liquors within the limits of the capitol building of the United States), and all acts and parts of acts, were repealed. By section 44 this act of February 20, 1907, would not take effect until from and after July 1, 1907.

One marked difference between section 3 of the respective acts is that under the act of 1903 there was no limitation placed upon the length of the holding of such person for the purpose of prostitution for which the offender might be prosecuted; whereas, under the last statute the offense of holding must have been committed within three years after the person shall have entered the United States. There is the further difference, in that the later statute provides that any such alien woman found as an inmate of a house of prostitution or practicing prostitution, at any time within three years after she shall have entered the same, shall be deemed to be unlawfully within the United States and shall be deported, etc.

As no date is alleged in the indictment when the woman in question was imported, and the act of 1903 placed no limit upon the time when the woman should be held to subject the party to prosecution, it is inconsistent with the foregoing provision of the later act of 1907, and to that extent stands repealed as in conflict with the later act. It is, therefore, quite evident that the pleader had it in mind to predicate the first count of the indictment on the act of 1907, because it charges that the defendant held the said Marie Peuroy within three years after she had entered the United States, and that she had come to the United States within three years prior thereto; that is to say, three years prior to the time of the initiation of said holding.

Looking at the first count by its four corners, it is manifest that the intendment of the pleader was to charge the petitioner with the offense of holding and harboring the said woman in Chicago for the forbidden purpose within three years after she had entered the United States.

It is hardly conceivable that it was in the mind of the pleader to charge in the one count the two distinct offenses embraced in said section 3 of the act; one for the importation into the United States, and the other for holding such person in the United States after such illegal importation. Manifestly the preceding part of the count, alleging the importation, was only coupled with the holding for immoral purposes as matter of inducement leading to the substantive charge of holding the woman in the Northern district of Illinois, which was a jurisdictional fact essential to confer jurisdiction on that court. So that in pronouncing judgment of conviction under this count it is sustainable, if at all, on the presumption that the court found the illegal holding of the woman within the jurisdiction of that court for such immoral purposes.

It is not to be imputed to the learned judge pronouncing said judgment that he undertook to exercise jurisdiction over the offense

of importing into the United States this woman, who the indictment alleges came as an immigrant from the Republic of France, and consequently over the sea to some Atlantic seaport. That offense was consummated the moment such immigrant was landed within the United States. Under article 3, cl. 3, of section 2 of the Constitution of the United States, the trial of all crimes, except in cases of impeachment, shall be by jury, and held in the state where said crime shall have been committed. In the sixth amendment of the Constitution it is declared:

"That in all criminal prosecutions the accused shall enjoy the right of a speedy and public trial by an impartial jury in the state and district wherein the crime shall have been committed."

The jurisdiction over such offense is not peripatetic, attaching to any United States court wherever such immigrant may wander after landing. Judge De Haven of the District of California, in United States v. Giovanni Capella, 169 Fed. 890, in opinion of March 27, 1909, a copy of which is before me, rightly held that the offense was entirely committed at the port of New York where the subject was landed in the United States. "The consequent act of the defendant in bringing the said minor within the jurisdiction of this (California) court is no part of the offense of illegally bringing her into the United States."

There are some things of which the courts will take judicial notice neither required to be proved or disproved. They will take judicial notice of the territorial extent of the general government, the local divisions of the country, its geography, its natural water courses, and of the boundaries of the same. So Greenleaf on Evidence, vol. 1 (16th Ed.) § 6a, says:

"The courts of the United States, moreover, take judicial notice of the ports and waters of the United States in which the tide ebbs and flows; of the boundaries of the several states and judicial districts."

Accordingly, in United States v. La Vengeance, 3 Dall. 297, 1 L. Ed. 610, the court took judicial notice of the geographical position of Sandy Hook.

In the case of The Apollon, 9 Wheat. 374 (6 L. Ed. 111), the court said:

"It has been very justly observed at the bar that the court is bound to take notice of public facts and geographical positions."

In the case of The Steamboat Thomas Jefferson, 10 Wheat. 428, 429, 6 L. Ed. 358, where the libelant claimed wages on a voyage from Shippingport, in the state of Kentucky, upon the Missouri river, and back again to the port of departure, the court took judicial notice of the fact that not only in the commencement or termination, but in all the intermediate progress of the boat, it was several hundred miles above the ebb and flow of the tide, and, therefore, the wages could not be considered as earned in a maritime employment.

In The Planter (Peyroux v. Howard) 7 Pet. 325, 8 L. Ed. 700, it was said:

"The court will certainly take judicial notice that the Bay of New York, for instance, is within the ebb and flow of the tide."

And also that the court will take judicial notice of the fact that the city of New Orleans is in the ebb and flow of the tide of the sea, and, therefore, the jurisdiction in admiralty would prevail there.

So here, the court will take judicial notice that a seagoing vessel carrying immigrants coming from the Republic of France to the United States did not find a port of entry within the Northern district of the state of Illinois. As well say that if this petitioner had been indicted and convicted in the District Court of Oklahoma, Colorado, Kansas, or Wyoming, for bringing to the United States this woman from the Republic of France, such court would have had jurisdiction of the subject-matter.

It has been held, furthermore, that the courts of the United States will take judicial notice of the rules and regulations prescribed by the heads of departments of the government. Caha v. United States, 152 U. S. 212, 14 Sup. Ct. 513, 38 L. Ed. 415. So in Smith et al. v. City of Shakopee, 103 Fed. 240, 44 C. C. A. 1, it is held that the courts of admiralty will take judicial notice of the regulations of the lighthouse board, prescribing the number and kinds of lights to be placed on the draws of bridges across navigable streams, although they are neither pleaded nor offered in evidence.

The act of Congress in question shows throughout that the purpose and scheme of the enactment was the prevention and suppression of the introduction into the United States of undesirable immigrants, such as lawless persons, anarchists, and felons, of prostitutes, and persons infected with loathsome and contagious diseases, lunatics, and the like; and to that end immigration bureaus were established to exercise a supervisory regulation and control to prevent the landing of such immigrants. The landing of such persons is made an offense. In order to make the law effective, immigrant stations have been created, such as Ellis Island. New York, and Charleston, S. C., New Orleans, and other recognized ports of entry on the Atlantic seacoast; and one at San Francisco to enforce the law against the importation of Chinese and other Orientals. Carrying vessels of immigrants are not allowed to land elsewhere.

It may be conceded, for the sake of argument, that the woman in question imported from France might first have entered the Dominion of Canada on the Atlantic seaboard and crossed the boundary into the United States. But how could she have reached Chicago without having theretofore entered United States territory outside of the Northern district of Illinois? If by overland, she would have traversed territory of another state. If by water, it might have been through the Mackinaw Straits, and thence on Lake Michigan to the city of Chicago. But in so coming, at Mackinaw she would have entered the United States, and been within the jurisdiction of the district of Michigan. In either contingency the offense of such importation would have been committed prior to reaching the Northern district of the state of Illinois.

When this indictment was found and the judgment of conviction was entered herein, the cases of Keller v. United States and Ulman v. United States, supra, had not been decided, holding that the regulation and prevention of the holding and keeping of a woman for the

immoral purpose of prostitution was within the exclusive police power of the respective states and was not delegated by the Constitution to Congress.

The judgment of conviction under which this petitioner is held in the United States penitentiary at Leavenworth, Kan., is, therefore, void, and he is held in restraint of his liberty without authority of law. In such situation, the writ of habeas corpus is the appropriate remedy for his enlargement. Ex parte Parks, 93 U. S. 18, 23 L. Ed. 787; Ex parte Terry, 128 U. S. 289, 9 Sup. Ct. 77, 32 L. Ed. 405; Nielsen, Petitioner, 131 U. S. 176, 9 Sup. Ct. 672, 33 L. Ed. 118; In re Tyler, Petitioner, 149 U. S. 164, 13 Sup. Ct. 785, 37 L. Ed. 689; In re Swan, Petitioner, 150 U. S. 637, 14 Sup. Ct. 225, 37 L. Ed. 1207. This for the reason that the want of jurisdiction over the subject-matter makes the judgment absolutely void, and affords a ground for relief by the writ of habeas corpus. 21 Cyc. 296, etc.

It results that the petitioner must be discharged from custody.

It is so ordered.