## UNITED STATES v. KRSTEFF.

(District Court, S. D. Illinois. January 13, 1911.)

No. 13,064.

**1. CRIMINAL LAW (§ 113*)—VENUE—ILLEGAL IMPORTATION.**

Where an indictment charged an illegal importation into the United States of an alien woman for an immoral purpose, prohibited by Act Cong. Feb. 20, 1907, c. 1134, § 3, 34 Stat. 899 (U. S. Comp. St. Supp. 1909, p. 447), as amended by Act March 26, 1910, c. 128, 36 Stat. 263, and showed that the importation was complete at the port where the alien was landed, the venue was in that district, and could not be laid in another district to which accused and the alien thereafter went.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 113.*]

**2. ALIENS (§ 56*)—ILLEGAL IMPORTATION—IMMORAL PURPOSE.**

Mere unlawful cohabitation within a district with an alien woman imported for immoral purposes is not in violation of Immigration Act Feb. 20, 1907. c. 1134, 34 Stat. 898 (U. S. Comp. St. Supp. 1909, p. 447), as amended by Act March 26, 1910, c. 128, 36 Stat. 263, prohibiting the holding or attempt to hold any alien woman or girl for immoral purposes in pursuance of an illegal importation; Congress having no jurisdiction to control the morals of alien women within the United States, unless in some manner connected with unlawful importation.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 56.*]

**3. ALIENS (§ 59*)—IMPORTATION—IMMORAL PURPOSES—KEEPING, MAINTAINING, AND CONTROLLING—INDICTMENT.**

Under Act Cong. Feb. 20, 1907, c. 1134, 34 Stat. 898 (U. S. Comp. St. Supp. 1909, p. 447), as amended by Act March 26, 1910, c. 128, 36 Stat. 263, prohibiting importation of alien females for immoral purposes, and declaring that whoever shall hold or attempt to hold any alien woman or girl for such purpose in pursuance of such illegal importation shall, on a conviction, be confined in prison, etc., counts in the indictment alleging an illegal importation into the United States, and that thereafter defendant, within the district, kept, maintained, controlled, and supported the female claimed to have been illegally imported for immoral purposes "in pursuance of such illegal importation," were not demurrable.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 59.*]

**4. ALIENS (§ 59*)—ILLEGAL IMPORTATION—UNLAWFUL PURPOSE.**

An indictment for keeping, maintaining, controlling, supporting, or harboring an alien female pursuant to an illegal importation for an immoral purpose, alleging that such purpose was unlawful cohabitation and adultery, sufficiently charged that the purpose was immoral, in violation of Act Cong. Feb. 20, 1907, c. 1134, 34 Stat. 898 (U. S. Comp. St. Supp. 1909, p. 447), as amended by Act March 26, 1910, c. 128, 36 Stat. 263, prohibiting

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the keeping, etc., in any house, etc., for the purpose of prostitution, or for any other immoral purpose, of any woman or girl after she shall have entered the United States.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 59.*]

Anton Krsteff was indicted for violating the immigration act and demurred. Demurrer to third and fourth counts overruled, and accused convicted.

W. A. Northcott, U. S. Atty., and H. A. Converse and J. H. Story, Asst. U. S. Attys.

Gray Herndon and Oscar J. Putting, for defendant.

HUMPHREY, District Judge. Anton Krsteff, a native of Bulgaria, was indicted under section 3 of the immigration act of February 20, 1907 (Act Feb. 20, 1907, c. 1134, 34 Stat. 899 [U. S. Comp. St. Supp. 1909, p. 450]), as amended March 26, 1910 (Act March 26, 1910, c. 128, § 2, 36 Stat. 264).

The indictment consisted of four counts. Defendant demurred to the indictment, and at the close of the testimony moved to instruct the jury to find the defendant not guilty. The substance of the four counts is as follows: The first count charges the illegal importation into the United States from Bulgaria by the defendant Krsteff of an alien woman for an immoral purpose, describing it. The second count charges the illegal importation into the United States, and that, in pursuance of the illegal importation, he unlawfully cohabited with her within the jurisdiction of this court. The third count charges the illegal importation into the United States for an immoral purpose at Galveston, Tex., and that the defendant proceeded from thence to Madison, Ill., in the jurisdiction of this court, and that in pursuance of such illegal importation for an immoral purpose he did hold the said alien woman in a house at Madison, Ill., in the jurisdiction of this court, for an immoral purpose, and describing it. The fourth count charges the unlawful importation at Galveston, Tex., for an immoral purpose, and that in pursuance of said illegal importation he held, controlled, maintained, and supported the said alien woman at Madison, Ill., within the jurisdiction of this court, for an immoral purpose, describing it.

The first count is insufficient, for the reason that under the act of February 20, 1907, the importation into the United States was complete at the port of Galveston, Tex., and the venue was properly in that district.

The second count is insufficient for the same reason, and also because it charges unlawful cohabitation in the district, and the fact of unlawful cohabitation with an alien woman would not be a violation of the act in question.

Counsel for the defendant urged that the third and fourth counts are controlled by the decisions in Keller v. U. S., 213 U. S. 138, 29 Sup. Ct. 470, 53 L. Ed. 737, and in Ex parte Lair (D. C.) 177 Fed. 789. They argued that the reasons laid down in these cases, the holding of the alien woman in this district, and the maintaining, controlling, and supporting of her in the district, in pursuance of an illegal importa-

tion, are merely matters of police regulations reserved to the states, and not a matter over which Congress has any power to legislate, and are therefore unconstitutional, and for those reasons the demurrer should be sustained, and the motion to direct a verdict be given. An examination of the Keller and the Lair Cases convinces me that they do not control the charge as made in these last two counts. In the Keller Case the clause of the act of February 20, 1907, then before the court, and the one upon which the indictment was drawn, was as follows:

"Whoever shall keep, maintain. control, support, or harbor in any house or other place, for the purpose of prostitution or for any other immoral purpose. any alien woman or girl, within three years after she shall have entered the United States, shall. in every such case, be deemed guilty of a felony, and on conviction thereof, be imprisoned not more than five years, and pay a fine of not more than five thousand dollars."

The clause of the act upon which the third count in this indictment is drawn is as follows:

"Whoever shall hold. or attempt to hold, any alien woman or girl, for any such purpose, in pursuance of such illegal importation."

The purpose is set out in the first clause of the section.

It will be readily seen that the clause in this section upon which the decision in the Keller Case was decided does not contain the words, "in pursuance of such illegal importation," but, in the absence of these words, the act attempts to make it a felony to "keep, maintain, control, support, or harbor in any house or other place, for the purpose of prostitution, or for any other immoral purpose, any alien woman or girl, within three years after she shall have entered the United States." The clause of this section, as it read at that time, made it a felony for the keeper of a house of prostitution to keep in his house for the purpose of prostitution any alien woman within three years after her coming to the United States, no matter how good a woman she might have been when she came, and regardless of the fact that the keeper knew of her coming, or for what purpose she came. This is nothing more nor less than an attempt on the part of Congress to control the morals of all alien women for a period of three years after coming to the United States, and to control the dealings of the millions of people in the United States with alien women along certain lines for a period of three years. It is clear that Congress has no such power, unless by apt words of the statute those dealings shall relate and have connection with some matter of importation which is made unlawful by Congress, and the matter of the unlawful importation shall be known to the party sought to be charged.

The matter of the dealings of all of the people in the United States, foreigners and natives, with each other, when it relates to those dealings, and nothing more, upon a question of morals or good conduct, is a matter over which Congress has no control to punish as a crime, but is a matter exclusively reserved to the states. The matter of importation into the United States of foreigners is a matter exclusively within the power of Congress to control and regulate, and that control and regulation can be made to apply to dealings with those foreigners

in the United States, when those dealings relate to and have to do with the matter of importation.

In the Keller Case, page 147 of 213 U. S., page 473 of 29 Sup. Ct. (53 L. Ed. 737), the court speaking upon this subject, and having before it the clause above quoted, says:

"As to the suggestion that Congress has the power to punish one assisting in the importation of a prostitute, it is enough to say that the statute does not include such a charge, the indictment does not make it."

And it might be added the testimony does not show it. I find nothing in the Keller Case that in any way controls the case at bar.

Ex parte Lair (D. C.) 177 Fed. 789, was a hearing on a writ of habeas corpus.

The four counts upon which a conviction was had are set forth in substance on page 791, as follows:

"The first count of the indictment charges, in substance, that the petitioner * * * in the Eastern Division of the Northern District of Illinois unlawfully, willfully, and knowingly imported into the United States, for the purpose of prostitution, and unlawfully, willfully, and knowingly did hold, to wit, from the 1st day of January, 1906, until the 15th day of July, 1907, in pursuance of such illegal importation, in their certain house of prostitution there situate, etc., in said city of Chicago, for the purpose of prostitution, a certain alien woman named Marie Peuroy, who was then a citizen of the Republic of France, within three years after she had entered the said United States, and that she came to, and entered, the United States within three years prior thereto, against the peace and dignity," etc.

"Second count charges that the petitioner in the year 1906, and from that time until the 15th day of July, 1907, at Chicago, in said district, unlawfully, knowingly, and willfully held for the purpose of prostitution in pursuance of an illegal importation for the purpose of prostitution in the house of prostitution, at the designated street in said city, the said Marie Peuroy, who was then a citizen of the Republic of France, within three years after she had entered the said United States, and that she came to, and entered said United States within three years prior thereto," etc.

The third and fourth counts are practically the same as the second count, above quoted. On page 792 the court says:

"It is conceded on the part of the United States attorney, representing the government, that, in so far as the last three counts of the indictment are concerned (this includes the second count above quoted), the judgment or sentence is invalid, and void, as held by the Supreme Court in the cases of Keller v. United States, and Ullman v. United States, 213 U. S. 138 [29 Sup. Ct. 470, 53 L. Ed. 737], * * * for the reason that the offense against public morals for holding a person in a house of prostitution pertains to the police power of the state, and it is not within the competency of Congress to regulate or prohibit the same."

The Lair Case was decided shortly after the decision in the Keller Case, and the United States attorneys who contested the matter before the learned judge evidently had not properly read and understood the decision in the Keller Case, or they never would have conceded the last three counts in the Lair Case to be framed under an unconstitutional statute. If, in presenting the law to the court, the United States attorneys admitted that the second, third, and fourth counts of the Lair indictment were bad under the Keller decision, and these counts contained practically the charge as set forth in the second count above quoted, then there was nothing left for the court to consider but the

first count of the indictment. It will be noted that this count is divided into two parts—the first part charging the unlawful importation into the United States for the purpose of prostitution, etc., and the second part with holding in pursuance of said illegal importation in a certain house for the purpose of prostitution a certain alien woman, etc.

This second part of the first count is the same charge as is contained in the last three counts (conceded by the United States attorneys to be demurrable), so it is evident that the learned judge never considered this second part of the charge in the first count, but based his opinion upon the charge made in the first part of the first count, that being a charge of unlawful importation, and the act of importation having been complete under the first clause of section 3 of the act of February 20, 1907, the court decided that the venue was at the port of entry, and not in the district where the case was tried, or, if it was decided upon the second part, it must have been held bad for the reason conceded by the United States attorneys as to the last three counts.

The court, on page 793 of 177 Fed., says:

"Looking at the first count (which count charges the importation and the holding) by its four corners, it is manifest that the intendment of the pleader was to charge the petitioner with the offense of holding and harboring the said woman in Chicago for the forbidden purpose within three years after she had entered the United States."

The fourth count charges the unlawful importation at Galveston, Tex., and that in pursuance of such illegal importation the defendant kept, maintained, controlled, and supported the said alien woman for an immoral purpose within the jurisdiction of this court; the immoral purpose being described.

After the decision by the Supreme Court in the Keller Case, the Congress on March 26, 1910, amended this act by adding to the latter clause the words "in pursuance of such illegal importation." The importation of an alien woman for an immoral purpose, having been made unlawful by the act of February 20, 1907, and being in effect at the time the defendant brought this woman into the United States, and it having been made an offense by the amendment of March 26, 1910, to keep, maintain, control, or support in pursuance of such illegal importation, then to keep, maintain, control, or support an alien woman for an immoral purpose who had been imported unlawfully under the provisions of the act of February 20, 1907, after this amendment was in effect, was a matter within the power of Congress to control and regulate by statute, and Congress having so acted, then the keeping, maintaining, controlling, or supporting of an alien woman in a house for an immoral purpose in pursuance of such illegal importation after the amendment of March 26, 1910, was a violation of the act as amended, and subjected the defendant to indictment.

Upon the question as to whether the facts set forth in the indictment show the holding, keeping, maintaining, or controlling to be for an immoral purpose, within the meaning of statute, to wit, "the purpose of unlawful cohabitation and adultery," and directly charging the commission of these acts, it is enough to quote from the Supreme Court in United States v. Bitty, 208 U. S. 400, 401, 28 Sup. Ct. 398, 52 L. Ed. 543:

"But the last statute (February 20, 1907) on which the indictment rests is. we have seen, directed against the importation of an alien woman 'for the purpose of prostitution, or for any other immoral purpose,' and the indictment distinctly charges that the defendant imported the alien woman in question 'that she should live with him as his concubine'; that is, in illicit intercourse, not under the sanction of a valid or legal marriage. Was that an immoral purpose within the meaning of the statute? * * * Now the addition in the last statute of the words 'or for any other immoral purpose,' after the word 'prostitution,' must have been made for some practical object. Those added words show beyond question that Congress had in view the protection of society against another class of alien women other than those who might be brought here merely for purposes of 'prostitution.' "

And on page 402 of 208 U. S., page 399 of 28 Sup. Ct. (52 L, Ed. 543):

"We must assume that in using the words 'or for any other immoral purpose,' Congress had reference to the views commonly entertained among the people of the United States, as to what is moral or immoral in the relations between man and woman in the matter of such intercourse."

Page 403 of 208 U. S., page 399 of 28 Sup. Ct. (52 L. Ed. 543):

"The statute in question, it must be remembered, was intended to keep out of this country immigrants whose permanent residence here would not be desirable or for the common good."

The acts set forth in the indictment charge the holding, keeping, maintaining, or controlling to be for an immoral purpose within the meaning of the statute.

For the reason stated, the demurrer to the third and fourth counts is overruled.

NOTE.—Trial by jury. Verdict guilty, and defendant sentenced to penitentiary at Leavenworth, Kan., for two years, and fined $100 and costs.