UNITED STATES of America

v.

**MOUNT FUJI JAPANESE STEAK HOUSE, INC., Tokuaki Fujita and Masonori Mori, Defendants.**

**No. 76 CR 464.**

United States District Court,
E. D. New York.

Aug. 29, 1977.

David G. Trager, U. S. Atty., Brooklyn, N. Y., E. D. N. Y., by Paul F. Corcoran, Asst. U. S. Atty., Brooklyn, N. Y., for the United States.

Segal & Hundley, New York City by Lawrence Bader, Marvin B. Segal, Schiano & Wallenstein, New York City, of counsel, for defendants Mt. Fuji Japanese Steak House, Inc. and Tokuaki Fujita.

Alfred F. Carolonza, Jr., Millburn, N. J., for defendant Masonori Mori.

NEAHER, District Judge.

This is an omnibus motion to dismiss a 38 count indictment charging defendants, a New Jersey corporation operating restaurants in New York ("Mt. Fuji"), its president and a manager of one of the restaurants, with violations of the immigration laws.[1] Defendants are charged with inducing the entry of, bringing into, transporting and harboring aliens not lawfully entitled to enter or reside in the United States, the four offenses specified in 8 U.S.C. § 1324(a), and with conspiring to commit those offenses, under 18 U.S.C. § 371. As a general statement, the government intends to prove that defendants, through their agents, induced and brought over Japanese aliens to work in the New York Mt. Fuji restaurants, met the aliens at the John F. Kennedy International Airport (JFK), and harbored them at their restaurants, providing the aliens with not only employment but food, shelter and other services. The motion is denied in all respects for the reasons which follow.

*Evidence Before the Grand Jury*

First, defendants move to dismiss the inducement, bringing into and transporting charges (Counts 2–27) on the ground that the government could not have presented evidence to the grand jury of an essential element of the crimes charged, that is, that the aliens who were allegedly induced to enter, brought in and transported were

> "not duly admitted by an immigration officer or not lawfully entitled to enter or reside within the United States." 8 U.S.C. § 1324(a).

Defendants argue that, because the aliens possessed facially valid non-immigrant visas ("tourist visas") at the time of entry, the government must prove that the visas were fraudulently procured, which could only be done by production of the visa application forms before the grand jury.

■ Preliminarily, absent any suggestion of improper use of the grand jury, the court is unwilling to exercise its discretion and inspect the grand jury minutes to determine if there was proof of a particular element of the offenses. See *United States v. Costello*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *United States v. Tane*, 329 F.2d 848 (2 Cir. 1964). However, since the visa application forms, which defendants contend are essential, were concededly destroyed by the government and not presented to the grand jury, the court need not address that issue. The contention that the government was required to produce visa application forms is strictly a legal issue which may be addressed on the merits. As the same contention would be reiterated at trial at the close of the government's case the court will deal with it now. As a legal proposition defendants' argument fails.

■ The government must prove the aliens were not lawfully entitled to enter or to reside in the United States under the terms of any law relating to immigration. One such law makes excludable an alien

---

1. A fourth codefendant has pleaded guilty to one count of transporting an alien.

who "has procured a visa . . . by fraud, or by willfully misrepresenting a material fact." 8 U.S.C. § 1182(a)(19). The government's theory *is* one of fraud—that the aliens procured and were admitted on tourist visas while their actual purpose and intent at all times was not to tour or visit the United States but to work in defendants' restaurants. Contrary to defendants' position, there is no logical reason why the government should be required to produce the underlying application forms in order to show that the visas were procured by fraud. The aliens are fully competent to testify as to their intent at the time of procurement of the visas.

*In re G____M____*, 7 I & N Dec. 40 (BIA 1956), on which defendants so strongly rely is not determinative. That was an administrative exclusion proceeding in which the intent of the alien at time of his re-entry into the United States, which had occurred 13 years previously, was at issue. There, Immigration's failure to require the alien to complete the application form made it impossible to prove his intent. Here, the aliens themselves are expected to testify as to their true intent. Moreover, there is no claim that the purpose of the visit as stated on the visas differs from the purpose set forth on the application form. Indeed, the government claims that the real purpose, employment, was never disclosed. Although a State Department regulation does provide that visa application forms are to be retained in consular files, 22 C.F.R. § 41.-124(i), the regulation does not specify how long such forms are to be kept, nor does the court perceive that the government should reasonably be expected to keep them *ad infinitum*. There is no suggestion that the forms were destroyed in bad faith and their absence is not critical, in light of the aliens' expected testimony. In sum, the visa application forms are not essential to proof of procuring visas by fraud.

In addition to expected testimony that the visas were fraudulently procured, the government relies on other statutory provisions to establish that the aliens were not entitled to enter or reside in the United States. These provisions are: first, that the aliens were excludable because they sought to enter the United States by fraud, 8 U.S.C. § 1182(a)(19); second, that the aliens sought to enter for the purpose of performing labor without the requisite certificates, *id.* § 1182(a)(14); and third, that any alien who is excludable, under § 1182, is deportable, *id.* § 1251.

■■ At the outset, it cannot be said that the government's proof of such additional violations constitutes an impermissible deviation from its bill of particulars.[2] The function of a bill of particulars is to furnish a defendant with facts beyond those contained in the indictment to enable him to prepare his defense, to avoid the danger of surprise at trial and to plead double jeopardy. *United States v. Kushner,* 135 F.2d 668, 673 (2 Cir.), *cert. denied,* 320 U.S. 808, 63 S.Ct. 1449, 87 L.Ed. 1850 (1943). It does not entitle a defendant to disclosure of the government's evidence or of its legal theories. *United States v. Fruehauf,* 196 F.Supp. 198 (S.D.N.Y.1961). That is what was requested here.

■■ The government claims, as stated in its bill, that the visas were fraudulently procured. Not inconsistent with that statement, and indeed following on its heels, is the claim that the visas were used to gain entry. The fraud alleged is constant—the aliens' entry as tourists when their real intent was employment. The government thus is not choosing between two contradictory legal theories in showing visa fraud and fraud at time of entry, in its proof at trial. It belies common sense to suggest that an alien who has entered this country to do other than he has represented in his documentation, even though he successfully passes through immigration authorities, is

---

**2.** In response to defendants' demand that the government particularize in what respect the aliens, who defendants allegedly conspired to bring into the United States, were not lawfully entitled to enter or reside here, the government

stated, "Having fraudulently obtained tourist visas by means of false statements, and omissions to state material facts, said aliens were not entitled to enter or reside in the United States."

lawfully entitled to enter or reside in the United States.[3]

To conclude, defendants present no legitimate reason warranting dismissal of these counts. Production of the visa application forms is not essential to the government's case. Nor is the government prohibited from showing not only that the aliens fraudulently procured tourist visas but that their subsequent entry by means of those visas was fraudulent.

*Venue*

Defendants claim, secondly, that the inducing and bringing in counts (Counts 2–19) should be dismissed for improper venue. It appears undisputed that the aliens traveled from Japan on continuing or connecting flights to their ultimate destination of New York, arriving at JFK airport, after having initially landed and been inspected by officials at one of the following points: Honolulu, Hawaii, Anchorage, Alaska or San Francisco, California. Defendants argue that venue is proper only in the districts in which the aliens were admitted or, alternatively, in the District of New Jersey, where the corporate and individual defendants reside.

 Proper venue in a criminal case lies in the district where the offense was committed. United States Constitution art. III, § 2 and amendment VI; Rule 18, F.R. Crim.P. These provisions do not provide a defendant with a right to trial in his home district. *Platt v. Minnesota Mining & Manufacturing Co.,* 376 U.S. 240, 245, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964); *Johnston v. United States,* 351 U.S. 215, 220–21, 76 S.Ct. 739, 100 L.Ed. 1097 (1956); *United States v. Chestnut,* 533 F.2d 40, 46 (2 Cir. 1976). If a crime is begun in one district and completed in another, or committed in more than one

district, venue is proper in any district in which the offense was begun, continued or completed. 18 U.S.C. § 3237. See *United States v. Busic,* 549 F.2d 252 (2 Cir. 1977). In determining the locus of the offense, the court must look to both the nature of the offense and the location of the acts constituting it. *United States v. Chestnut, supra.*

Turning to the inducement counts, defendants maintain, and the government now agrees, that any inducement of the aliens to enter unlawfully took place in Japan and therefore was completed before the aliens entered the United States. *United States v. Castillo–Felix,* 539 F.2d 9 (9 Cir. 1976); *United States v. Williams,* 464 F.2d 599 (2 Cir. 1972).[4]

 Even though the acts of inducement, if any, occurred outside the United States, the effect of such acts if successful, would take place within the United States. Such activities, intended to facilitate unlawful entry by aliens, have a strong adverse effect upon the regulation and control of immigration and therefore provide a sufficient basis for the United States to exercise jurisdiction over the offenses. *United States v. Castillo-Felix, supra,* 539 F.2d at 13; *United States v. Williams, supra,* 464 F.2d at 601.

The government contends that venue is proper on the inducing counts because this is the district which has the most substantial nexus to the charges and was the only district directly affected by the aliens' entry. Also relied upon is 18 U.S.C. § 3238, which provides that if an offense is completed outside the United States trial is to be where the defendant is arrested or first brought. The government states it will show that defendants, through their agents in Japan, contacted the aliens in Tokyo, told the aliens their airfare to New York would

---

3. Defendants also contend there is no evidence of fraud at time of entry because the aliens were not obligated to say anything at that time. Aside from asking for a determination of the sufficiency of the government's evidence before presentation of its case at trial, see Rule 29, F.R.Crim.P., the aliens' silence at entry, even if such occurred, would not prohibit a finding of a fraudulent entry. The exhibition of the tourist

visas might well constitute a fraudulent act as much as an avowed statement that the purpose of the entry was to visit. See *Reyes v. Neely,* 228 F.2d 609, 611 (5 Cir. 1956).

4. This is not to say that inducement always is completed outside the United States and these cases do not so hold.

be provided and they would be met and given jobs and shelter.

■■■ The court need not find venue on the basis of 18 U.S.C. § 3238.[5] In essence, defendants are charged as principals who, while not themselves in Japan, acted through agents in Japan, to cause the offense of inducement to be committed. 18 U.S.C. § 2(b). The indictment charges, and the government claims it will prove, illegal action by defendants within this district, sufficient for venue purposes. See *United States v. Taller*, 394 F.2d 435, 437–38 (2 Cir.), *cert. denied*, 393 U.S. 839, 89 S.Ct. 115, 21 L.Ed. 109 (1968). Furthermore, the sole intended effect of the inducement—unlawful entry for purposes of working in defendants' restaurants located within this district—occurred here. See *United States v. Williams, supra.* Venue on the inducement counts is therefore proper in this district.

■■■ With respect to the bringing in charges, defendants maintain that once the aliens entered the United States at Hawaii, Alaska or California, any offense of unlawfully bringing in of the aliens was completed. They argue that the bringing in offense is not a continuous offense and therefore venue is proper only in the places where the aliens landed and went through immigration, despite the fact that the aliens continued on flights to their destination, New York. *United States v. Capella*, 169 F. 890 (N.D.Cal.1909). *Accord, United States v. Krsteff*, 185 F. 201 (S.D.Ill.1911).

The government maintains that in these circumstances the crime of unlawfully bringing in aliens is a continuous offense involving air transportation, in which venue is proper in New York where the crime ended under 18 U.S.C. § 3237. It asks the court to distinguish *Capella* and *Krsteff* as decided before the advent of air transportation.

The court agrees with the government that venue is proper in New York. The

cases cited by defendants are not dispositive. First, in determining proper venue it may be helpful to focus on who are named as the defendants in this case. The aliens are not being prosecuted for their unlawful entry. Rather, the individuals and the corporation who the government claims brought about the aliens' illegal entries are named as defendants. These individuals did not meet the aliens when they landed at the various points of entry or participate in gaining their admission. They remained in New York. They did, however, arrange the aliens' air transportation, including completion of the international trips to New York, met the aliens when they arrived in New York and took charge of them thereafter. Thus, the present situation differs not only in time or means of transportation, but in fact, from that of *Capella* and *Krsteff*. In *Capella* the California indictment for illegal importation of an alien charged the defendant with bringing an alien into New York by means of false representations to New York immigration inspectors and, in pursuance of that illegal importation, thereafter bringing the alien to California. All defendant's acts centered in New York, yet he was indicted in California. In contrast, defendants here had no connection whatsoever with the other districts. They made no statements and were not present at time of the aliens' entry. The aliens' admissions to the country in Hawaii, Alaska or California were simply fortuitous. *Cf. United States v. Busic, supra.* To the extent that *Capella* and *Krsteff* are inconsistent the court respectfully declines to follow them.

Also in support of venue at place of the aliens' entry, defendants rely on *United States v. Vasilatos*, 209 F.2d 195 (3 Cir. 1954). However, that decision held venue proper, in a prosecution of an alien for unlawful entry, where the alien crewman had obtained clearance to land by false representations, although he had not actually set foot on shore where he was cleared. Not only was the alien himself being prosecuted, which differs from this case, but

---

**5.** As the government points out, 18 U.S.C. § 3238 appears to contemplate the absence of the defendant from the country at the time the

crime is committed. See *United States v. Provoo*, 215 F.2d 531 (2 Cir. 1954).

whether venue would have been proper in any other district was not at issue.

In deciding the locus of an offense for venue purposes, the court may be aided by "study[ing] the key verbs which define the criminal offense in the statute." *United States v. Chestnut, supra,* 533 F.2d at 46–47; *United States v. Slutsky,* 487 F.2d 832, 839 (2 Cir.), *cert. denied,* 416 U.S. 937, 94 S.Ct. 1937, 40 L.Ed.2d 287 (1973); *United States v. Bithoney,* 472 F.2d 16, 23 (2 Cir.), *cert. denied,* 412 U.S. 938, 93 S.Ct. 2771, 37 L.Ed.2d 397 (1973). Also the court must ascertain "when the defendant's actions have progressed to the point where a court can confidently conclude that a crime has been committed." *United States v. Bithoney, supra.*

The operative words here are "brings into or lands" in the United States. 8 U.S.C. § 1324(a)(1). The offense deals with defendants' own actions of bringing into or landing the aliens in the United States. The indictment charges that these acts were done by defendants within this district. That is sufficient for venue purposes. Moreover, due to the fraudulent element here, until the aliens walked off the plane at New York into the arms of defendants, there could be no positive assurance that the offenses were being committed.[6] If the aliens had stayed in Hawaii or Alaska or California and had not proceeded to New York, or in any event had abandoned the plan of illegally working for defendants and timely left the country at expiration of the authorized visitation period, then there would have been no fraudulent entry. Furthermore, in a very real sense, the offense was a continuing one within the meaning of 18 U.S.C. § 3237. Not until the journey to New York was completed could *defendants* be said to have unlawfully brought in the aliens, notwithstanding their initial entry at other points.

Finally, all factors point to venue in this district. Where all defendants' actions regarding the aliens they allegedly brought into the United States were directed to fulfillment in this district, had their effect in this district and had no substantive connection with the districts where the aliens first entered, the court concludes that venue on the bringing in counts is proper and that defendants' motion should be denied.[7]

*Harboring*

Defendants' next major challenge is directed to the charges of harboring. The statute makes illegal a person's "willfully or knowingly . . . harbor[ing] in any place" any illegal alien,

"*Provided, however,* That for the purposes of this section, employment (including the usual and normal practices incident to employment) shall not be deemed to constitute harboring." 8 U.S.C. § 1324(a).

First, defendants argue that the indictment fails to negative an exception, namely the employment proviso quoted above, and is therefore fatally defective as to Counts 28–38. As the government states, however, this proviso does not exempt employers from the operation of the statute. Rather, it is a refinement of what is meant by harboring. The proviso does not state an essential element of the offense, but only comes into play should a defendant wish to establish that his acts constituted employment or the usual and normal practices incident thereto and not harboring. See *McKelvy v. United States,* 260 U.S. 353, 357, 43 S.Ct. 132, 67 L.Ed. 301 (1922).

---

**6.** *United States v. Williams, supra,* supports venue in this district. There defendant entered the United States at JFK airport returning from Jamaica with the alien, in furtherance of his commitment to arrange the alien's entry. The alien continued on the flight to Canada, then covertly reentered with a border pass provided by a contact of defendant, traveled back to New York City and was met by defendant here.

**7.** Even if the aliens were being prosecuted for obtaining entry by a willfully false or misleading representation or by the willful concealment of a material fact, 8 U.S.C. § 1325, such prosecution may be instituted not only where the violation occurred but wherever the alien might be apprehended. *Id.* § 1329.

Secondly, defendants claim that the acts alleged to constitute harboring were in connection with and incidental to the aliens' employment and thus not criminally punishable. Defendants appear to suggest that whenever an employment relationship exists there can be no harboring.

■ If employment of aliens by defendants were alone alleged, or to be proved at trial, defendant' motion, as the government recognizes, would have merit. However, the government's theory, as it has stated, is not limited to employment, but includes food, shelter, help in adjusting their illegal status and other services. Defendants maintain that whatever else was done for the aliens was totally bound up in their employment relationship. However, to come within the employment proviso, other acts must be the "usual and normal practices incident to employment." The plain meaning of practices incident to employment refers not to defendants' own practices but to those necessary to the kind of employment generally. An employer who "goes beyond the 'normal' incidents of employment may violate the statute." Gordon & Rosenfield, 2 Immigration Law & Procedure § 9.23c. Otherwise, all employers and not just the act of employment would be without the statute. The court does not so read the statute. What the government must show is what might be termed employment plus, that is, "conduct tending substantially to facilitate an alien's remaining in the United States illegally." *United States v. Lopez*, 521 F.2d 437 (2 Cir.), *cert. denied*, 423 U.S. 995, 96 S.Ct. 421, 46 L.Ed.2d 368 (1975). That includes the provision of "shelter" and need not be clandestine. *United States v. De Evans*, 531 F.2d 428 (9 Cir. 1976).

■ In sum, if, despite the employment relationship, defendants have acted by providing shelter or other services to substantially facilitate the aliens' remaining in this country illegally, then they may be found guilty of harboring, unless the conduct was a practice usual and normal to employment. Whether defendants' conduct comes within the harboring proscription can only be determined at trial. Defendants' motion to dismiss the harboring counts is denied.

*Other Challenges*

■ Defendants further claim that the conspiracy, inducement and bringing in counts should be dismissed because of failure of proof before the grand jury of any agreement or any inducement or bringing in. Their argument rests on the likelihood that no co-conspirators testified before the grand jury. Proof of an agreement need not, and most often does not, come from the mouths of the conspirators. Absent any suggestion of misuse of the grand jury, the court declines to review the grand jury minutes. *United States v. Costello, supra.*

■ Next, defendants claim that the allegations of the transporting counts are defective because they fail to allege that the persons transported were aliens, not lawfully entitled to enter the United States. However, the indictment tracks the statute as to the offense of transporting by stating that the defendants knew the person named as being transported was in the United States in violation of law. The government must set forth the elements of an offense in an indictment. *United States v. Tramunti*, 513 F.2d 1087 (2 Cir. 1975). As defendants have more than adequate notice of what they are defending against, any error is a technical one, which is not subject to a motion for dismissal.

■ Finally, defendants ask that two paragraphs of the conspiracy count, which allege that two of the objectives of the conspiracy were to induce and bring in aliens illegally, be stricken because these objectives were completed prior to the commission of the overt acts alleged. Those acts are the meeting of two aliens at the airport by one of the defendants. Simply answered, the scope of the conspiracy is not narrowed upon completion of one aspect of it. The conspiracy objectives of inducement and bringing in aliens illegally were properly alleged in the indictment.

Accordingly, defendants' motions to dismiss are denied.

SO ORDERED.