**UNITED STATES ex rel. VOUNAS v. HUGHES, District Director of Immigration, etc.**

**No. 7470.**

Circuit Court of Appeals, Third Circuit.

Dec. 2, 1940.

Ralph W. Wescott, of Camden, N. J., and Michael C. McManus, of Philadelphia, Pa., for relator.

William F. Smith, Acting U. S. Atty., and W. Orvyl Schalick, Asst. U. S. Atty., both of Trenton, N. J., for respondent.

Before BIGGS, MARIS, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

There are no "harder cases" than those resulting from the operation of the Immigration laws.[1] Particularly is this so when the application is to expulsion rather than exclusion. To be shown the promised land is bad; to have loved and lost it is worse.[2] Fortunately, the appeal of the case at bar is not to the judicial heart, but to the judicial mind.

---

[1] Landis, Deportation and Expulsion of Aliens, 5 Encyl. of the Social Sciences 95; Van Vleck, The Administrative Control of Aliens.

[2] National Commission on Law Observance and Enforcement, Report on The Enforcement of the Deportation Laws of the United States, No. 5, May 27, 1931, p. 3 (Majority of the Committee), p. 26 (Oppenheimer); Oppenheimer, Recent Developments in the Deportation Process, 36 Michigan Law Review 355; Fong Yue Ting v. United States, 149 U.S. 698, 13 S.Ct. 1016, 37 L.Ed. 905; Ng Fung Ho v. White, 259 U.S. 276, 42 S.Ct. 492, 66 L.Ed. 938.

The relator is an alien seaman. The findings of fact and conclusions of law of the learned District Judge are correct by concession. So, the legal position therein described must be accepted. They are set forth in United States ex rel. Vounas v. Hughes, D.C., 33 F.Supp. 420, and the pertinent ones read as follows:

## Findings of Fact

"1. That relator, a citizen of Greece, arrived in the United States at the Port of New York as a seaman aboard the Steamship Nicholas on January 9, 1938. * * *

"4. That he was not admitted to the United States as an immigrant or non-immigrant, but only as a seaman to return to his vessel or to reship.

"5. That he deserted his ship and remained in the United States until his arrest in deportation proceedings on August 2, 1939."

## Conclusions of Law

"In this proceeding there is no claim that the relator is not deportable, as being an alien seaman who has remained in the United States for a longer time than permitted by the 1924 Act and regulations made thereunder, nor is there any suggestion that the relator was not given a fair hearing before Franklin K. Riley, an immigrant inspector, in pursuance of which hearing the warrant of deportation was issued."

The seaman, therefore, cannot enjoy our hospitality permanently. He, or, in fairness, we suppose his counsel, prefers that he enjoy for a while longer that sector of it represented by the immigration service detention pen. That while longer will be, of course, the time necessary for this appeal, and if the decision is favorable to the relator the further time required for the decision of three immigrant inspectors instead of one. Our decision is not favorable and so we are constrained to do our part in abbreviating this questionable boon.

Relator, as we have seen, admits that he is deportable. He desires, however, to select the headman. This, he maintains, is by statute a board of special inquiry rather than the single immigrant inspector who actually wielded the ax.[3] This is the second reported case—so far as we know at least—where an alien seaman has attempted such a delaying tactic. In the case of United States ex rel. Filippini v. Day, D.C., 18 F.2d 781, a Circuit Judge in the Second Circuit brushed it aside on the ground that the alien seaman had had a fair hearing. We cannot quite concur in the view that this is dispositive. Population control (in the non-biological sense) is an attribute of sovereignty. Fong Yue Ting v. United States, 149 U.S. 698, 13 S.Ct. 1016, 37 L.Ed. 905; Attorney General of Canada v. Cann, [1900] A.C. 542 (Eng.); Musgrove v. Chung Tewng Fox, [1891] A.C. 272.[4] In some countries it is considered a prerogative of the executive.[5] In the United States the Constitution assigns it to the legislative branch.[6] Adherence to the statutory prescription is therefore mandatory. Rodgers v. United States, 3 Cir., 152 F. 346. If an alien seaman is entitled to three boots rather than to one only, three boots he must have.[7] By the same token, however, any condition precedent to the operation of the statute is of equal importance. The condition here, as in the case in the Second Circuit, is a qualification for admission. It requires no dictionary to demonstrate that one cannot "examine" as to a non-disputed fact.[8]

This would suffice to dispose of the appeal. Since the appellant, entirely, and the learned District Judge, mostly, dealt with a different point, some further discussion

---

[3] "Any alien seaman who shall land in a port of the United States contrary to the provisions of this subchapter shall be deemed to be unlawfully in the United States, and shall, at any time within three years thereafter, upon the warrant of the Secretary of Labor, be taken into custody and brought before a board of special inquiry for *examination* as to his qualifications for admission to the United States, and if not admitted said alien seaman shall be deported * * *." 8 U.S.C.A. § 166 (italics ours).

[4] Cf. Handsaard Debates, Vol. 24, pp. 1065–9; Handsaard, Vol. 7, N.S. pp. 1434–1723; Moore, International Law Digest, Vol. 4, sec. 550, Expulsion, p. 67; Darut, De l'Expulsion des Etrangers (Aix 1902).

[5] Manson, The Admission of Aliens, 4 Journal of the Society of Comparative Legislation (N.S.) p. 114.

[6] U.S.C.A.Const. Part 1, art. 1, § 8, cl. 3, p. 201, note 328 and cases cited.

[7] Whether two or more judicial heads are better than one has been the subject of considerable discussion, Michigan Statute Recognizes Need for Three-Judge Trial Court, 24 Journal of the American Judicature Society 76.

[8] 15 Words and Phrases, Permanent Edition, p. 428 et seq.

thereof would seem courteous. Moreover, the contention is one of a general application not called for by the specialized facts of the principal case. That contention is one of an implied repeal of Section 34 of the Act of 1917, 8 U.S.C.A. § 166, by Section 14 of the Act of 1924.[9]

To pierce a screen of words in order to ascertain the intention of the user is always difficult. It is especially so when, as is the case with statutes, that intention is the collective one of a legislative body. The statutory scheme for immigrant control exhibits a sharp administrative difference[10] between exclusion[11] and expulsion.[12] So the alien was excluded by three immigrant inspectors and expelled by one, Van Vleck, above cited, pp. 33, 83. This difference has been criticized as being the exact opposite of a distinction, Van Vleck, above cited, pp. 210, 219, 247. The probabilities indicate a practical approximation of the two processes in the Labor Department's board of review.[13] Furthermore, it may have been intended to acknowledge the seriousness of deportation by making it the Secretary's own act, Van Vleck, above cited, p. 83. Curiously enough, the one exception to the general rule is found where the ties that bind, and so the hardships, are least. Seamen, those wards of admiralty,[14] were especially favored and they could do pretty well as they pleased. Taylor v. United States, 207 U.S. 120, 28 S.Ct. 53, 52 L.Ed. 130, United States ex rel. Danikas v. Day, 2 Cir., 20 F.2d 733, 735. The opportunity for evasion proved too tempting and the leak in the dike widened.[15] In closing it, tenderness toward the seafaring man tainted the legislative toughness toward the superfluous. The non-maritime alien had always, of course, been concentrated for inspection purposes and any attempt on his part to evade such concentration had consequently been assigned as statutory cause for deportation. In the case of the seaman such concentration is inconsistent with the conditions of the calling (boat comes up to wharf). The individual seaman is or should be conscious of what he must or must not do to preserve his right to admission. One of the things he clearly must not do is to abandon his profession and undertake life as a landlubber without benefit of immigrant inspection. He might then have been punished for so doing by deportation. Such punishment savors of the very thing Congress in another connection was engaged in prohibiting, namely, a more than monetary penalty for desertion,[16] the same Act by which he avoided the inspector. On the horns of this dilemma Congress decided to overlook the past evasion and emphasize the present status. Hence the alien seaman's right to insist upon proof of "excludability". As that, under time honored statu-

[9] "Any alien who at any time after entering the United States is found to have been at the time of entry not entitled under this subchapter to enter the United States, or to have remained therein for a longer time than permitted under this subchapter or regulations made thereunder, shall be taken into custody and deported in the same manner as provided for in sections 155 and 156 of this title. * * *" 8 U.S.C.A. § 214.

[10] This has been acknowledged in the cases, United States ex rel. Ciccerelli v. Curran, 2 Cir., 12 F.2d 394, and in the textbooks, Clark, Deportation of Aliens From the United States to Europe, pp. 196, 197, and has been held to be due process of law, Due Process Restrictions on Procedure in Alien Exclusion and Deportation Cases, 31 Columbia Law Review 1013 (note); Aliens—Right of Counsel—Due Process, 37 Yale Law Journal 380 (note); Right of An Alien to a Fair Hearing in Exclusion Proceedings, 41 Harvard Law Review, 522, 524 (note).

[11] 8 U.S.C.A. § 153. It seems probable that the original Act of March 3, 1893 was intended for the protection of the Government rather than for the advantage of the alien, Bouve, The Exclusion and Expulsion of Aliens in the United States, Chapter 4, p. 479.

[12] 8 U.S.C.A. § 155.

[13] Clark, above cited, pp. 302-3, 377, 379, 380-1, 383-7, 452, 489; Van Vleck, above cited, pp. 78, 146.

[14] The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760.

[15] "The investigations of the Immigration Commission disclose that there is a practice of articling seamen simply for the voyage from a foreign country to the United States, and that men so articled are in many instances aliens who would be deported if coming as passengers. Under the decision in the Taylor case the immigration law does not apply to such aliens. This fact, and the fact that the number of desertions is increasing creates a serious situation which requires legislation." H.Rept. No. 426, to accompany H.R. 21489, Vol. 2 House Reports, 62d Cong., 2d Sess., at p. 2. See also, Clark, above cited, p. 273.

[16] The LaFollette Act, 46 U.S.C.A. § 701; The Italier, 2 Cir., 257 F. 712; Congressional Debates, 64th Cong., 1st Sess., pp. 5044, 5045, 5187 et seq.

tory pattern, belonged to a three-man board of inquiry rather than to one inspector of "expulsability", it was so provided.[17]

So the law stood at the time of the enactment of the claimed implied repealer of Section 14 of the Act of 1924, 8 U.S.C.A. § 214. In 1927 the Court of Appeals for the Ninth Circuit in Nagle v. Hansen, 17 F.2d 557, at page 558, decided against repeal by implication, saying "we think it [the act of 1917] does create a special limitation, in favor of seamen as a class, which is not repealed by the 1924 act". Thereupon the next year the Committee of Congress in a Report to accompany H. R. 10078 advocated the repeal of section 34 in the following language:

"It will be noticed that this section (1) places a statute of limitation on 3 years from the time of landing upon the deportation of alien seamen; (2) affords the seaman a right to be heard before a board of special inquiry; (3) apparently allows his admission unless he is at the time of such hearing a member of one of the excluded classes. No reason was apparent to your Committee why a seaman should be granted any of these privileges which are not granted to any other class of aliens, and it is therefore provided in the bill subsection b of section 7 that this section be repealed. The effect of this repeal will be to place the seaman on the same plane as any other alien as far as the procedure in arrest and deportation cases is concerned." H. Rept. No. 485, p. 13, to accompany H. R. 10078, 70th Cong., 1st Sess.[18]

It does not appear whether the honorable committee was bowing to the authority of the case above cited or whether they had their own doubts in the premises. They may have been cognizant of a certain well-established tenet of statutory construction. That is, of course, the principle that the implied repeal of a special act or one dealing with a special subject is not generally effected by a subsequent general act or one dealing with a general subject.[19] Here the special is "seaman" and the general is "any".

However that may be this legislative history was presented in great detail to the United States Supreme Court. We find it in the briefs filed in the case of Philippides v. Day, 283 U.S. 48, 51 S.Ct. 358, 75 L.Ed. 833, October Term 1930. That case arose as the result of a conflict between a decision of the Ninth Circuit reaffirming the Hansen case, above cited,[20] and several cases in the Second Circuit.[21] Mr. Justice Holmes, who wrote the opinion for the Supreme Court, does not seem to have been impressed either by this history or by the principle of statutory construction suggested. He said:

"But we cannot accept the conclusion that deserting alien seamen are thereby made a favored class to be retained in this country when other aliens would be compelled to leave. 'Any alien' in section 14 of the act of 1924 includes alien seamen on its face and by the definition in section 28, Id. (8 U.S.C.A. § 224). * * * It seems to us too clear to need argument that the limitation of three years in section 34 of the act of 1917 does not override or qualify the clear and definite terms of section 14 of the act of 1924. Those terms must prevail. Zurbrick v. Traicoff [6 Cir.], 38 F.2d 811; United States ex rel. Cateches v. Day [2 Cir.], 45 F.2d 142". Philippides v. Day, 283 U.S. 48, 50, 51 S.Ct. 358, 359, 75 L.Ed. 833.

---

[17] The analogous clause in the original bill was much more drastically phrased: "That any alien, seaman who shall desert his vessel in a port of the United States or who shall land therein contrary to the provisions of this act shall be deemed to be unlawfully in the United States and shall, at any time within five years thereafter, upon the warrant of the Secretary of Commerce and Labor, be taken into custody and returned to such vessel or to a vessel belonging to the same owners, for removal from the United States * - * * ". Hearing before Committee on Immigration and Naturalization on H.R. 21489, sec. 4, 62nd Cong., 2d Sess., Part 6, p. 4, April 4, 1912.

[18] The same repealer was included in H.Rept. No. 1292, to accompany H.R. 11796, 68th Cong., 2d Sess., repeal of sec. 34 at p. 14; H.Rept. No. 991, to accompany H.R. 11489, 69th Cong., 1st Sess., repeal of sec. 34 at p. 12; H.Rept. No. 1348, to accompany H.R. 12444, 69th Cong., 1st Sess., repeal of sec. 34 at p. 12.

[19] Lewis' Sutherland Statutory Construction, Vol. 1, §§ 274, 275; Beal, Cardinal Rules of Legal Interpretation, 2d Ed., p. 463; 59 C.J. p. 931.

[20] Carr, Director of. Immigration, v. Zaja, 37 F.2d 1016.

[21] United States ex rel. Piccolella v. Commissioner of Immigration, 36 F.2d 1022; United States ex rel. Rios v. Day, 24 F.2d 654; United States ex rel. Cateches v. Day, 45 F.2d 142.

The issue in the above cited case is the time for deportation rather than the type of deporting authority. The two clauses are not, of course, separable. Furthermore the learned justice cited with approval the case of United States ex rel. Cateches v. Day, 45 F.2d 142, in which the Circuit Court of Appeals for the Second Circuit had before it our same issue of board of inquiry versus single inspector.[22] As the United States Supreme Court was not impressed neither, of course, may we be.

The order of the District Court dismissing the writ is affirmed.

---

[22] Cf. United States ex rel. Tsevdos v. Reimer, 2 Cir., 108 F.2d 860.