### UNITED STATES v. PRINCE LINE, LTD.

No. 217, Docket 21954.

United States Court of Appeals, Second Circuit.

Argued March 15, 1951.

Decided May 16, 1951.

Atty., Louis Steinberg, Dist. Counsel, and Lester Friedman, Attorney, Immigration and Naturalization Service, all of New York City, of counsel), for appellant.

Kirlin Campbell & Keating, New York City (Delbert M. Tibbetts, New York City, of counsel), for appellee.

Before SWAN, CHASE and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This appeal involves the deportation of an alien seaman who arrived at the port of New York in January 1941 as a member of the crew of a vessel owned by Prince Line, Ltd. He was inspected and granted shore leave by an immigrant inspector and thereafter deserted his ship and remained in the United States, having obtained employment in a bowling alley in Brooklyn. In March 1942, deportation proceedings were initiated which resulted in the issuance on June 29, 1942, of a warrant of deportation, pursuant to which he was deported through the port of San Francisco, California, in March 1947, at a cost to the United States of $270.25. To recover reimbursement for this expense the United States sued Prince Line, Ltd. Upon the pleadings, supporting and opposing affidavits and the record of the administrative deportation proceedings, each party moved for summary judgment. The defendant's motion was granted. From the resulting judgment dismissing the complaint the United States has appealed.

The material part of section 14 of the Immigration Act of 1924, 8 U.S.C.A. § 214, reads as follows: "Any alien who at any time after entering the United States is found to have been at the time of entry not entitled under this chapter to enter the United States, or to have remained therein for a longer time than permitted under this chapter or regulations made thereunder, shall be taken into custody and deported in the same manner as provided for in sections 155 and 156 of this title."

Irving H. Saypol, U. S. Atty., New York City (Henry L. Glenn, Asst. U. S.

Concededly the alien seaman was deportable. The dispute is whether he was deportable because he had "remained longer"

than his shore leave permitted, as the trial court held, or because he was "not entitled" to enter, as the appellant contends. The "remained longer" ground is a cause "arising subsequent to entry," and the cost of deportation for such a cause is payable from the governmental appropriation; but the "not entitled" ground is a cause arising prior to entry, and deportation for such a cause "shall be at the expense" of the owner of the vessel by which the alien came.[1] This suit is a test case and presents a question of first impression.

The facts are not in dispute. The alien, Amat Bin Hussain, was a native and a citizen of the Dutch East Indies. He had been a seaman for 13 years and on two previous voyages had come to the United States. The Prince Line vessel on which he was employed as a member of the crew arrived at the port of New York from Halifax, Nova Scotia on January 22, 1941. His documents were all in order for temporary admission as a seaman, and after inspection by an immigrant inspector he was granted shore leave in accordance with the regulations of the Immigration Service relating to alien seamen.[2] He was admitted on shore pass and deserted his ship. In March 1942 he was found by the immigration authorities and a warrant of arrest was applied for on the ground that he had remained in the United States longer than permitted by the Act or Regulations made thereunder. However, this ground was abandoned and the warrant of deportation stated that he was subject to deportation because (1) at the time of entry he was not in possession of an unexpired immigration visa,[3] and (2) he is a native of an island within the barred zone.[4] The Board of Immigration Appeals sustained these charges and also another, namely, that he is an alien ineligible to citizenship and not exempted by 8 U.S.C.A. § 213(c).[5] The evidentiary basis for sustaining these charges was an admission obtained from the alien in response to a leading question put to him at the deportation hearing on April 9, 1942.[6]

Section 3 of the 1924 Act, 8 U.S.C. A. § 203, defines "immigrant" to mean any alien departing from outside the United States and destined for the United States, except " * * * (5) a bona fide alien seaman serving as such on a vessel arriving at a port of the United States and seeking to enter temporarily the United States solely in pursuit of his calling as a seaman".

The appellant argues the alien was not within this exception because he was not seeking to enter temporarily solely in pursuit of his calling but had already formed the intent to desert; that, not being within the exception, he was an immigrant and could not legally be admitted under 8 U.S.C.A. § 213 without an unexpired immigration visa. This argument presupposes that the phrase "seeking to enter," etc., refers to the seaman's subjective intent rather than to the reason he gives to the immigrant inspector for wishing to land, with the result that if he forms the intent to desert before going ashore he forthwith becomes an immigrant required to be in possession of an unexpired immigration visa. We do not think such a construction of the statute is justified.

Before enactment of the Immigration Act of 1924, alien seamen who deserted ship were deportable under section 34 of the Immigration Act of 1917,[7] which

---

1. Section 20 of the Immigration Act of 1917, 8 U.S.C.A. § 156.

2. 8 C.F.R. Part 120.

3. 8 U.S.C.A. § 213(a): "No immigrant shall be admitted to the United States unless he (1) has an unexpired immigration visa * * *."

4. 8 U.S.C.A. § 136(n).

5. Why this additional charge was omitted from the warrant of deportation does not appear.

6. "Q. At the time of your arrival on January 22, 1941 was it your intention to remain permanently in the United States? A. Yes I had intentions to remain and stay here."

7. 8 U.S.C.A. § 166.

contained a three year statute of limitations and provided for deportation at the expense of the appropriation provided in section 20.[8] Section 14 of the 1924 Act repealed by implication the provisions of said section 34 with respect to the three year limitation and the hearing before a board of special inquiry.[9] Thereafter for many years the practice of the immigration authorities, in the cases of deserting alien seamen, was to deport them on the ground that they had overstayed their leaves. The regulations adopted to carry out the 1924 Act were evidently drawn with this practice in mind. Section 120.37 provides that an alien temporarily admitted as a bona fide seaman "shall be deemed to have remained in the United States for a longer time than permitted" if he is found here after the expiration of his shore leave or any authorized extension thereof.[10] Another section provides: "Any alien who upon arrival establishes that he is a bona fide seaman as defined in § 120.2 is admissible as a non-immigrant under section 3(5) of the Immigration Act of 1924 * * * *"[11]

The use of the word "establishes" plainly indicates that what the alien says and the documents he submits to the examining immigrant inspector, rather than his subjective intent or concealed motive for wishing shore leave, are determinative of his status as a non-immigrant. This is further substantiated by the preceding section, § 120.20, entitled "Alien seamen seeking entry as immigrants." One does not "seek" entry as an immigrant without disclosing that fact. In the light of these regulations we are convinced that the construction which the appellant now seeks to put upon section 203(5) so as to convert an alien seaman into an "immigrant" by reason of his secret and undisclosed intent cannot be sustained.[12] Moreover, if it were sustained, the practical result likely to follow would be that in the future no ship would permit its alien seamen to go ashore in our ports, for it would be impossible for the shipowner to protect himself against the risk of having to bear the expense of deporting a deserting seaman if, years later, the immigration authorities could get the seaman to admit that he had, before getting shore leave, already formed the intention to desert. We cannot believe that Congress intended legislation which would be likely to produce such a result.

Our conclusion that such was not the Congressional intent is further supported in a ruling by the Board of Immigration Appeals, which held that the duty to detain an alien seaman under section 20 of the 1924 Act, 8 U.S.C.A. § 167, is completely discharged after the seaman is inspected and granted shore leave by an immigration officer.[13] It should also be noted that the Board has taken the position that a shipowner may not be subjected to a fine under section 16 of the Act of 1924, 8 U.S.C.A. § 216, for bringing to the United States an "immigrant" not in possession of an unexpired visa, where the "immigrant," having shipped as a bona fide seaman, did not announce his intention to take up permanent residence until his arrival and the shipowner in the exercise of reasonable diligence could not have discovered such intention. The Board stated that "A con-

8. 8 U.S.C.A. § 156.

9. 8 U.S.C.A. § 214. See Philippides v. Day, 283 U.S. 48, 51 S.Ct. 358, 75 L.Ed. 833; United States ex rel. Tsevdos v. Reimer, 2 Cir., 108 F.2d 860, 861; United States ex rel. Vounas v. Hughes, 3 Cir., 116 F.2d 171.

10. 8 C.F.R. § 120.37(a) (1).

11. 8 C.F.R. § 120.21(a).

12. It is interesting to note that the appellant's theory is of comparatively recent origin. The affidavit of Mr. Lechner states: "Shortly before the beginning of the last war it came to my attention that the Immigration Service was indulging in a practice of obtaining when possible a statement from deserting seamen that it was their intention to remain in the United States at the time the vessel from which they deserted arrived at a port in the United States, and thereupon to order such deserting seamen deported, not as seamen but as intending immigrants. From that time on the Immigration Service began to demand that Furness, Withy & Company, Ltd. or owners of the vessels undertake the deportation of such deserting seamen, which we consistently refused to do, * * * *".

13. In the Matter of the S. S. "Favorit," 1 I. & N.Dec. 214.

trary holding would require the institution of fine proceedings * * * in the case of all seamen who remained longer than permitted and who upon apprehension testify they had formulated an intention prior to arrival of remaining permanently in the United States. Such a view could not be seriously maintained." [14] Finally, we refer again to the regulations, which certainly have construed Congressional purpose in a manner contrary to the government's present contentions.

The appellant relies heavily on this court's decision in Sleddens v. Shaughnessy, 2 Cir., 177 F.2d 363. That case construed section 203(2) relating to temporary visitors. While the logic of that decision may tend to support the appellant's position in the present case we do not deem it controlling in the case of alien seamen. Not only is the statutory language different but also no regulations in conflict with the construction we there adopted were brought to our attention.

For the foregoing reasons we agree with the district court that the alien was deportable on the ground that he overstayed his leave and not on the ground that he was an immigrant "not entitled" to entry. Judgment affirmed.

14. In the Matter of the S. S. "Australind," 2 I. & N.Dec. 623, 626.