**Petition for Naturalization of Sime MATESICH.**

United States District Court S. D. New York.

Sept. 27, 1954.

Anita Streep, New York City, for petitioner.

William J. Kenville, Naturalization Examiner, Elmhurst, N. Y., pro se.

BICKS, District Judge.

Petitioner, a native and national of Yugoslavia who has resided in the United States continuously since his entry on July 20, 1950, filed a petition for naturalization under Public Law 86 of the First Session of the 83rd Congress, 8 U.S.C.A. § 1440 et seq. That enactment authorizes naturalization of any person, not a citizen, who has actively served or actively serves, honorably, in the Armed Forces of the United States between June 24, 1950 and July 1, 1955 for a period or periods totalling not less than 90 days provided he has been lawfully admitted to the United States and was physically present within the United States for a single period of at least one year at the time of entering the Armed Forces. The Immigration and Naturalization Service recommends denial of the petition on the sole ground that petitioner was not lawfully admitted to the United States.

Petitioner last arrived in the United States on July 20, 1950, as a member of the crew of the S/S Hrvastka. He was admitted on that occasion in conformity with the provisions of Sec. 15 of the Immigration Act of 1924, 8 U.S.C.A. § 215 [now Immigration and Nationality Act, § 214, 8 U.S.C.A. § 1184], and the Regulations issued thereunder,[1] as a bona fide alien seaman for the period the vessel on which he arrived remained in the United States but in no event in excess of 29 days. Because he overstayed his said leave, deportation proceedings were instituted. At the hearing therein he was examined through an interpreter and the record shows that, in response to a question [2] which in simpler form has been characterized as leading,[3] stated he intended to "stay always" in the United States. On the basis of that answer, the Immigration and Naturalization Service contends that petitioner was not a "bona fide alien seaman" as that term is defined in the Regulations, in that he was not "seeking to enter the United States temporarily * * * with the intention of departing with the vessel or reshipping on board any other vessel for any foreign port or place",[4] but was an "immigrant", as defined in Section 13(a) of the Immigration Act of 1924 [now 8 U.S.C.A. § 1181(a)], without a visa and hence was not lawfully admitted.

The petitioner urges (i) the issuance of the permit pursuant to Section 15 of the 1924 Act conclusively determines that he was lawfully admitted and precludes inquiry into whether it was procured by fraudulent representation of his intent or state of mind, citing United States v. Prince Line, 2 Cir., 189 F.2d 386 and Brownell v. Gutnayer, D.C.Cir., 212 F.2d 462 as authority; (ii) he did in fact intend to depart with his vessel when he procured leave to enter on July 20, 1950, and that the response he made to the examiner's question,[5] which ap-

---

1. Immigration and Naturalization Regulations under the Immigration Act of 1924, 8 C.F.R. Part 120, § 120.21.

2. "Q. At the time of your arrival, was it your intention to remain in the United States indefinitely, or to seek employment ashore in this country? A. Yes, I intended to stay always."

3. United States v. Prince Line, 2 Cir., 189 F.2d 386 at page 388.

4. Immigration and Naturalization Regulations, supra, § 120.2.

5. Note (2), supra.

pears to be to the contrary, was the result of confusion and misunderstanding.

The cases relied upon by the petitioner do not sustain his position. In the Prince Line case, supra, the shipowner was being sued under the provisions of Sec. 20 of the Immigration Act of 1917, 8 U.S.C.A. § 156 [now 8 U.S.C.A. § 1253], which authorized recovery of deportation expenses from the owner of the vessel by which a deported seaman came, if the seaman was " 'not entitled' to enter". The deported seaman had been granted shore leave by an immigrant inspector in accordance with the Regulations of the Immigration Service relating to alien seamen.[6] The Court refused to hold the shipowner liable for the very practical reason that a contrary holding would result in the ship refusing its alien seaman leave to go ashore because, as the Court pointed out, "it would be impossible for the shipowner to protect himself against the risk of having to bear the expense of deporting a deserting seaman if, years later, the immigration authorities could get the seaman to admit that he had, before getting shore leave, already formed the intention to desert." Clearly distinguishable is the case where the seaman seeks to procure an invaluable right and privilege predicated upon his wrongdoing. A refusal to foist liability upon an innocent owner for the seaman's fraudulent concealment of his intent to desert, is no warrant for allowing the miscreant seaman to found a right thereon.

The Gutnayer case, supra, is also inapposite. It treats with an accredited official of a foreign government and not with an alien seaman. Subdivision (1) of Section 203 of the Immigration Act of 1924 [now 8 U.S.C.A. § 1101(a) (15) (A)] excludes such official from the definition of the term "immigrant" in language which precludes any test of subjective intent.

Turning to the fact issue it should be noted that the responsibility for granting or denying a petition for naturalization is imposed by statute upon the judge, for, although he receives the findings and recommendations of the designated examiner, he must decide whether to approve such recommendations.[7] Accordingly, petitioner was afforded a hearing before the Court. After careful consideration of his testimony the Court is satisfied that petitioner misunderstood the question put to him at the deportation hearing, and that on July 20, 1950, he did not intend to remain indefinitely in this country.

In view of the foregoing, the petition for naturalization is granted.

---

6. Note (1), supra.

7. 8 U.S.C.A. § 1446(d) ; Petition of ZELE, 2 Cir., 127 F.2d 578, 580.