UNITED STATES of America, ex rel. Josip FERETIC, a/k/a Joe Feretic, Relator-Appellee,

v.

Edward J. SHAUGHNESSY, as District Director of the Immigration and Naturalization Service for the District of New York, etc., Respondent-Appellant.

No. 208, Docket 23374.

United States Court of Appeals Second Circuit.

Argued March 7, 1955.

Decided April 4, 1955.

---

2. 29 U.S.C.A. § 201 et seq.

Service, New York City, of counsel), for respondent-appellant.

Before MEDINA and HINCKS, Circuit Judges, and BURKE, District Judge.

MEDINA, Circuit Judge.

A long series of administrative proceedings, which we need not describe in detail, came to an end on May 18, 1954, when relator, a native of Yugoslavia, exhausted his last administrative remedy and his deportation was ordered. The validity of the proceedings leading to the order of deportation is raised in the usual way by habeas corpus.

The question of deportability leads us back to an application by the relator in 1949 for adjustment of his immigration status under Section 4 of the Displaced Persons Act of 1948 and another in February, 1954, for relief under Section 6 of the Refugee Relief Act of 1953. Each of these applications was denied, and the issue now before us is narrowed down to one of statutory interpretation. Section 4 of the Displaced Persons Act of 1948 [1] provides:

"(b) When used in this section the term 'Displaced Person residing in the United States' means a person who establishes that he lawfully entered the United States as a non-immigrant under section 3 or as a non-quota immigrant student under subdivision (e) of Section 4 of the Immigration Act of May 26, 1924, as amended, and that he is a person displaced from the country of his birth, or nationality, or of his last residence as a result of events subsequent to the out-break of World War II; and that he cannot return to any of such countries because of persecution or fear of persecution on account of race, religion or political opinions. * * *"

Section 6 of the Refugee Relief Act of 1953 [2] requires that the alien applicant establish among other things, "that prior

Albert Mayer, New York City, for relator-appellee.

J. Edward Lumbard, U. S. Atty. for the Southern Dist. of N. Y., New York City (Harold J. Raby, Asst. U. S. Atty., New York City, and Lester Friedman, Atty., Immigration and Naturalization

1. 62 Stat. 1011, 50 U.S.C.A.Appendix, § 1953.

2. 67 Stat. 403, 50 U.S.C.A.Appendix, § 1971d.

to July 1, 1953, he lawfully entered the United States as a bona fide nonimmigrant".

 The last entry of relator into the United States prior to the filing of his 1949 petition was on December 24, 1944, at the port of San Pedro, California, as a member of the crew on the S.S. Calliroy, at which time he was admitted as a nonimmigrant under the provisions of Section 3(5) of the Immigration Act of 1924.[3] His papers were in order as a "bona fide alien seaman" temporarily here and with the intention of departing at or before the expiration of his leave on the same or some other vessel. In reality, however, his own unequivocal testimony compels a finding that when he left the ship he intended to stay here permanently if he could. Under these circumstances, we have no doubt that his entry was illegal. In effect he perpetrated a fraud upon the immigration authorities when he induced them to let him off the ship on the basis of the usual papers presented by bona fide alien seamen; and he was not "a bona fide nonimmigrant". No amount of sympathy for an alien who wishes to disassociate himself from a communistic regime in the country of his birth can furnish justification or excuse for disregarding the plain mandate of the statute.

While our decision in Sleddens v. Shaughnessy, 2 Cir., 1949, 177 F.2d 363, had to do with an alien visitor here on business who had overstayed his leave, the principle involved is identical with that controlling here, as Sleddens also had testified that it was his intention to remain in America permanently, if possible. What evidently misled the court below was certain phraseology in United States v. Prince Line, 2 Cir., 1951, 189 F.2d 386, 389, "that what the alien says and the documents he submits to the examining immigrant inspector, rather than his subjective intent or concealed motive for wishing shore leave, are determinative of his status as a non-immigrant." But the issue there was simply whether or not the steamship company was required to pay the expenses of deportation, under Section 20 of the Immigration Act of 1917, which has since been superseded by Section 243(c) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1253(c), providing that transportation companies shall be liable for the cost of deporting alien seamen without out reference to the ground of deportation. The opinion as a whole makes it clear that the court hesitated to adopt a rule, in cases where alternative grounds of deportation were concededly available, which might unfairly burden shipowners by making their liability depend upon the subjective intent of the seaman. In any event, the Prince Line case is not applicable here.

Accordingly, we reverse the order appealed from and direct the dismissal of the writ.