**Hector Manuel REYES, Appellant,**

v.

**Marcus T. NEELY, District Director, Immigration and Naturalization Service, El Paso District, Appellee.**

**No. 15642.**

United States Court of Appeals
Fifth Circuit.

Jan. 6, 1956.

Francis S. Ainsa, El Paso, Tex., for appellant.

Wm. Monroe Kerr, Asst. U. S. Atty., Midland, Tex., Russell B. Wine, U. S. Atty., San Antonio, Tex., Holvey Wil-. liams, Asst. U. S. Atty., El Paso, Tex., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and RIVES, Circuit Judges.

RIVES, Circuit Judge.

This appeal from a judgment denying habeas corpus, and remanding the appellant to the custody of the United States Immigration and Naturalization. Service for further action, presents one sole contention, viz.: "Appellant did not violate Section 241(a) (13)[1] of the Immigration & Nationality Act of 1952 in that the aliens Jose Morales Hernandez and Antonio Nunez Marquez did not on September 17, 1952 enter the United States in violation of law."

We have carefully read and considered the entire transcript of record and find the substance of the evidence adduced at the hearings before the Special Inquiry Officer of the Immigration and Naturalization Service to be accurately summarized in the parties' "agreed statement of record on appeal", quoted in the margin.[2]

Admittedly, the appellant aided, abet-ted and encouraged the aliens to enter

1. "§ 1251. *Deportable aliens—General classes*

"(a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—

\* \* \* \* \*

"(13) prior to, or at the time of any entry, or at any time within five years after any entry, shall have, knowingly *and for gain,* encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law." 8 U.S.C.A. § 1251(a) (13).

2. "Hector Manuel Reyes was born in Juarez, Chihuahua, Mexico on December 18, 1925 and is a citizen of Mexico. He was lawfully admitted to the United States for permanent residence on August 30, 1945 at El Paso, Texas and has resided in the United States since

that time. He last entered the United States at El Paso, Texas from a visit to Juarez, Mexico on January 29, 1953. In the summer of 1952 Appellant engaged part-time in selling religious pictures to farm workers in the El Paso valley. Prior to September 17, 1952 Appellant became acquainted with two Mexican citizens, Jose Morales Hernandez and Antonio Nunez Marquez and it was mutually agreed in Juarez, Mexico that they would sell religious pictures for him as his agents on a commission in areas in the United States surrounding El Paso, Texas, from which Appellant would make a profit of two or three dollars per picture. On September 17, 1952 Marquez and Hernandez picked up Appellant's automobile in Juarez, Mexico at his request and drove across the International Bridge from Juarez, Mexico to El Paso, Texas, pursuant to the above agreement, where . . .

the United States to work therein, when he knew that their cards were not valid for such purpose.[3]  A misrepresentation may be made as effectively by conduct as by words.  The conduct of the aliens in entering the United States by showing their Border-Crossing Identification Cards to the Immigration Officer, when they knew that such cards were not valid for work in the United States, but had already agreed to work for the appellant in this Country, and, at the time of entry, actually intended so to do, constituted, we think, false misrepresentation to the Immigration Officer.  The facts of this case are stronger against the appellant than those appearing in cases holding that an undisclosed illegal intention at the time of entry may convert an otherwise legal entry into a violation of law.  Sleddens v. Shaughnessy, 2 Cir., 177 F.2d 363; United States ex rel.

Feretic v. Shaughnessy, 2 Cir., 221 F.2d 262.

Appellant's main reliance is upon United States v. Prince Line, 2 Cir., 189 F.2d 386.  The opinion in that case distinguishes the earlier Second Circuit decision in Sleddens v. Shaughnessy, supra, and is itself distinguished by the later opinion of the same court in United States ex rel. Feretic v. Shaughnessy, supra.  We have more difficulty distinguishing the rationale of the opinion of the District of Columbia Circuit in Brownell v. Gutnayer, 94 U.S.App.D.C. 90, 212 F.2d 462, 464, though even that rationale would not excuse the false misrepresentation to the Immigration Officer clearly and intentionally made by the conduct of the aliens in this case.  We think the judgment was right and it is

Affirmed.

they picked up pictures from Appellant, and were on their way out of El Paso, Texas to sell them when arrested by Immigration Officers.  At the time of their entry, Marquez and Hernandez were each in possession of a valid unexpired Border-Crossing Identification Card entitling them to enter the United States for shopping or pleasure, it being stated on said Cards however that said Cards were not valid to work in the United States.  At the time of their entry into the United States Marquez and Hernandez each showed their Border-Crossing Identification Card to the Immigration Officer in charge at the International Bridge but were not asked by him whether they intended to work in the United States or what purpose they had in entering the United States.  Neither of them told the Inspector that he was entering to work although that was the purpose of each.  Marquez and Hernandez made no oral statement of any kind to the Immigrant Inspector.  Marquez and Hernandez each knew that the Border-Crossing Identification Cards held by

them were not valid for work in the United States.  Appellant, when the picture-selling arrangement was made, knew that the only documents Marquez and Hernandez had entitling them to enter the United States were Border-Crossing Identification Cards and further knew that such Cards were not valid to work in the United States.  Appellant believed that if Marquez and Hernandez were found working in the United States they would lose their Border-Crossing Identification Cards and be deported, but Appellant had no actual knowledge of Section 241(a) (13) of the Immigration & Nationality Act of 1952 and therefore did not believe he was violating any United States law."

3.  In addition to the stipulation, see Karnuth v. United States, 279 U.S. 231, 243, 49 S.Ct. 274, 275, 73 L.Ed. 677, holding that "work" does not fall within the definition of "business or pleasure" used with reference to an alien visiting the United States "'temporarily for business or pleasure.'"