MATTER OF SS "SAN MARCO IV"

In FINE Proceedings

NYC–10/52.49

*Decided by Board July 6, 1961*

Fine—Vessel's owners solely liable under sec. 243(e) for failure to pay crew-
man's deportation expenses—Liability for failure to comply with "order"
under sec. 243(c) depends upon contemporaneous association with vessel.

(1) Section 243(e) of the 1952 Act does not allow imposition of fine against
vessel's *agents* for failure or refusal to pay costs of deporting alien crew-
man. Under section 243(c) these expenses are assessable solely against
vessel's *owners* and penalty under section 243(e) for failure to make pay-
ment cannot be incurred by other parties.
(2) Liability to fine for failure to comply with "order" of Attorney General
will not attach to agents who have not acted for vessel in question for
nearly six years prior to "order". Sections 243(e) and 237(b) create re-
sponsibilities only for those parties who had specified relationship with
vessel at or reasonably contemporaneous with time of "order".

BASIS FOR FINE: Act of 1952—Section 243(e) [8 U.S.C. 1253].

IN RE: SS. *San Marco IV*, which arrived at the port of San Pedro, California,
from foreign on September 12, 1953. Alien crewman involved:
A—S—.

BEFORE THE BOARD

DISCUSSION: This appeal is directed to an administrative pen-
alty of $300 which the District Director at New York has ordered
imposed on the Transmarine Navigation Corporation, as agents for
the above-described vessel. The specific violation charged is failure
and/or refusal to pay the deportation expenses of the above-named
alien crewman.

It appears from the record submitted that the following material
facts exist without substantial controversy. The crewman was
granted a conditional permit to land temporarily in the United
States at the time of the vessel's arrival, *supra*. But he violated the
terms of his admission by failing to sail foreign with it and there-
after remaining in this country. However, he was taken into cus-
tody by the Service and ordered deported in 1957. He was removed
from the United States on the SS. *Independence* on May 26, 1959.
Appellant, who had acted as bunkering agents for the vessel's time
charterers upon its arrival, *supra*, was then billed for the costs of

350

his removal ($275). These fine proceedings followed its refusal to pay them.[1]

Appellant disclaims liability on the ground that only the vessel's owners are responsible for payment of the crewman's deportation expenses under section 243(c) of the Immigration and Nationality Act, which reads, in part:

* * * In the case of an alien crewman, if deportation proceedings are instituted at any time within five years after the granting of the last conditional permit to land temporarily under the provisions of section 252, * * * the deportation * * * shall be at the expense of the *owner or owners* of the vessels * * * by which such alien came to the United States * * *. (Emphasis supplied.)

The District Director, however, relies upon section 243(e), which provides that:

A failure or refusal on the part of the master, commanding officer, agent, owner, charterer, or consignee of a vessel, aircraft, or other transporta i on line to comply with the order of the Attorney General to take on board, guard safely, and transport to the destination specified any alien ordered to be deported under the provisions of this Act, or a failure or refusal by any such person to comply with an order of the Attorney General to pay deportation expenses in accordance with the requirements of this section, shall be punished by the imposition of a penalty in the sum and manner prescribed in section 237(b).

The latter section sets the penalty for each such failure or refusal at $300, and provides for withholding of clearance of the vessel until such penalty is paid.

The District Director is of the opinion that all three of the foregoing sections must be read together to properly identify the parties responsible for the expenses of the crewman's deportation. He reasons that the last two sections, by enumerating the persons subject to fine for violations spelled out therein, operate to define the words "owner or owners" contained in the first section. He concludes that an agent recorded as representing the owner of a vessel is one with the owner and assumes responsibilities under the Immigration and Nationality Act accordingly. He cites as authority two prior precedent decisions of this Board wherein we held agents liable to fines for failure to detain crewmen on board vessels arriving in the United States under section 254(a)(2) of the Immigration and Nationality Act (8 U.S.C. 1284), where they acted as such for:

---

[1] Before refusing to pay, appellant, at no slight inconvenience, had learned the identity of the vessel's owners at the time here involved; had ascertained that they had been reduced to bankruptcy; had discovered the name and address of the parties who had thereafter acquired ownership of the vessel; had requested the latter to pay the crewman's deportation expenses; had received a refusal of payment by the latter; and had made all this information known to the Service.

(1) Bunkering purposes only—*Matter of SS. "Lake Minne-wanka*," 5 I. & N. Dec. 296; and

(2) The time charterers solely—*Matter of SS. "Marilena*," 7 I. & N. Dec. 453.

The problem presented by the foregoing is obvious and, at least, insofar as we are concerned, one of first impression. We, however, are satisfied that the District Director's solution of it is incorrect, for several reasons.

First, we think the District Director applied too narrowly the rule of statutory construction that each section of the law must be read in connection with every other part so as to produce a harmonious whole (*Ex parte The Public National Bank of New York*, 278 U.S. 555). The Immigration and Nationality Act contains several administrative fine sections, other than 237(b) and 243(e), which have a direct bearing on section 243(c). Certainly, all these sections must be considered in arriving at a correct decision as to the proper scope of section 243(c) within the logical, legal framework of the Immigration and Nationality Act as it relates to crewmen.

Section 252, which is specifically mentioned in section 243(c), attached certain conditions to this crewman's admission:

(1) He was only permitted to remain in the United States for the period of time his vessel was to be in port, and in no event to exceed 29 days;

(2) He was required to depart from this country aboard the vessel on which he arrived; and

(3) He could not be paid off and/or discharged without the prior permission of the Service acting for the Attorney General.

In order to insure the control of the crewman under the foregoing part of the Act, section 254 imposed specific duties on designated parties connected with the vessel's operation at the time of its arrival, including its agents, as follows:

(1) To detain the crewman on board until he was inspected by an immigration officer;

(2) To detain the crewman on board after inspection, unless and until an immigration officer granted him a conditional landing permit; and

(3) Thereafter, to deport the crewman *if required* to do so by. an immigration officer.

Thereunder, the obligations of the agents as to the crewman were completely discharged when the first requirement was fulfilled and the crewman was issued a conditional landing permit (see *United States* v. *Prince Line, Ltd.*, 189 F.2d 386), for the reason that after the crewman had cleared the immigration officer and been admitted to the United States, albeit temporarily, the agents had absolutely

no control over his conduct. The binding effect of subsection (a) (2) of section 254 on the agents could have been reestablished by cancellation of the crewman's landing permit, which would have constituted *a requirement* for his deportation as provided for in No. 3, *supra* (see *Matter of M/V "Signeborg*," 9—6), but since this was not done the agents were beyond the reach of the statute.[2]

Accordingly, we do not think the view can seriously be maintained that sections 243(e) and 237(b) can be utilized to re-create responsibilities on the part of these agents who have not acted as such for this vessel since its arrival at least six years prior to the demand for payment. A careful consideration of these latter sections, in the light of the foregoing, makes it manifest that they relate only to the parties named therein who have the specified connection with the vessel at or reasonably contemporaneously with the Attorney General's "order" to take a crewman on board, guard him safely, transport him to the specified destination, or to pay his deportation expenses. Obviously, parties having no connection with the vessel as agents at or near the time of the Attorney General's "order" cannot reasonably be presumed to be in a position to comply therewith. We so hold. Factually, the absence of this contemporaneous time factor clearly distinguishes this case from those relied on by the District Director, *ante*. Furthermore, those cases are concerned with section 254 of the Immigration and Nationality Act which is entirely different from section 243(c).

Our second reason for disagreeing with the District Director is that there are several rules of statutory construction, other than the one he has applied, which are equally applicable to this situation. We think a proper application of all these principles, *infra*, clearly supports our ruling, *supra*.

The words "owner or owners" appearing in section 243(c) are ordinary and must be given their usual and commonplace meaning (*Auers* v. *Phillips Petroleum Co.*, 25 F. Supp. 458; *Schultz* v. *Morgan*, 42 Pac. 254). Certainly, the words "owners" and "agents" are not considered synonymous by any recognized authoritative lexicographers, legal or otherwise. In this connection, if the Congress had intended to hold the agents responsible, it would have been a simple matter to have named them in section 243(c) as was done in many other of the administrative fine sections of the Immigration and Nationality Act, including those relied on by the District Director. That it did not so intend is revealed by examination of the

---

[2] The question of a payoff and/or discharge in violation of section 252, *supra*, and section 256 of the statute is not involved here, and in any event the crewman's desertion relieved the agent of responsibility for the termination of his services and presence aboard his vessel (*Matter of SS. "Evimar*," 7—350).

legislative history of this section (Sen. Rep. No. 1137, 82d Cong., 2d Sess., Calendar No. 1072, p. 32, penultimate sentence, first complete paragraph).[3]

With relation to the foregoing, it is important to note that liability to fine under the sections referred to by the District Director depends upon an "order," which involves the element of personal notice. The introduction of this element furnishes another reason why the efforts of the District Director to equate the "agents" with the "owners" are unavailing. This is because where the element of personal notice is involved the "agents" are not one with the "owners." (See, *Matter of SS. "Morning Light*," 7—280; and *Compagnie Generale Transatlantique* v. *Elting*, 298 U.S. 217.)

Also, this statute must be strictly construed in all respects because of its quasi-penal nature (*Miller* v. *Robertson*, 266 U.S. 243). As a matter of law, it must be construed in favor of these agents (*United States* v. *J. H. Winchester & Co.*, 40 F.2d 472). That is, the language of the law cannot be enlarged beyond the meaning of its terms in order to carry into effect the general purpose for which it was enacted (*In re McDonough*, 49 Fed. 360). Mere convenience of enforcement cannot justify a strained construction of this statute (*United States* v. *J. H. Winchester & Co., supra*).

Support for the foregoing, if same be necessary, is found in the May 24, 1960, ruling of the Comptroller General of the United States in a substantially similar matter involving these same agents. This record contains a copy thereof, addressed to the Southwest Regional Office of the Service, which reads as follows:

Gentlemen:

Reference is made to your letter of March 29, 1960, reporting an uncollectible debt against the Transmarine Navigation Corporation in the amount of $547.75, representing detention and deportation cost of G—N—.

An examination of the records of the Maritime Administration shows that the SS. "IGOR" is owned by the Pelops Maritime Co., Ltd. (Greek) since 1956.

Since section 243(c), 8 U.S.C. 1254 (sic), provides that the owner (sic) of the ship involved are responsible for the charges as stated in your letter, no further action will be taken by this office toward collecting the amount due from the Transmarine Navigation Corporation. It is suggested that your office institute proper collection action against the Pelops Maritime Co., Ltd.

In connection with the foregoing, it is clear from the record that the Southwest Regional Office of the Service has considered itself bound by this ruling and has not instituted fine proceedings in cases such as this, and we think properly so. The only further comment on this point necessary is that the development of our first reason

---

[3] It reads as follows: "In the case of any alien crewman who is ordered deported within 5 years after the granting of the last conditional permit to land, the deportation [costs] from this country shall be borne by the *owner* of the vessel or aircraft on which he arrived." (Emphasis added.)

for sustaining the agents' appeal adequately disposes of the District Director's dismissal of the Comptroller General's ruling as a precedent.

**ORDER:** It is ordered that the appeal be sustained, that the fine be not imposed, and that the proceedings be and same are hereby terminated.