**1344**

**UNITED STATES of America**

v.

**Juan Manuel QUINONEZ–ALVARADO.**

**Crim. No. SA70CR80.**

United States District Court,
W. D. Texas,
San Antonio Division.

Oct. 16, 1970.

Seagal V. Wheatley, U. S. Atty., Henry J. Novak, Asst. U. S. Atty., San Antonio, Tex., for plaintiff.

William W. Beuhler, Jr., San Antonio, Tex., for defendant.

## MEMORANDUM AND ORDER

SPEARS, Chief Judge.

Defendant was indicted in one count for the alleged illegal transportation of an alien in violation of 8 U.S.C. § 1324 (a) (2).[1] The case was tried to the Court without a jury. The defendant, pursuant to Rule 29, F.R.Cr.P., moved for judgments of acquittal after the government's evidence had closed, as well as after the close of all the evidence. However, the Court overruled both motions, and after hearing all of the evidence and the arguments of counsel, found the defendant guilty as charged. A motion for new trial was timely filed as required by Rule 33, F.R.Cr.P., but no response thereto has been received from government counsel.

The evidence showed that defendant was in the process of transporting an alien from San Antonio, Texas to Lubbock, Texas for profit when he was apprehended, and it is undisputed that the entry of the alien into the United States was within three years prior thereto. The transportation of the alien occurred after he had entered the United States under a valid entry permit, but he testified that he came to this country "looking for work". However, when the government closed its case, no evidence had been offered that the alien had ever informed the defendant that he came to this country for the express purpose of working, although the defendant knew, or was charged with knowledge, that the border crossing card held by the alien did not entitle him to work in the United States. The question presented is whether defendant has violated the provision of Section 1324, which makes unlawful the transportation of "any alien * * * not duly admitted by an immigration officer or not lawfully entitled to enter or reside within the United States under the terms of this chapter or any other law relating to the immigration or expulsion of aliens * * * by any per-

---

1. "(a) any person * * * who * * * (2) knowing that he is in the United States in violation of law, and knowing or having reasonable grounds to believe that this last entry into the United States occurred less than three years prior thereto, transports, or moves, or attempts to transport or move, within the United States by means of transportation or otherwise, in furtherance of such violation of law; * * * any alien * * * not duly admitted by an immigration officer or not lawfully entitled to enter or reside within the United States under the terms of this chapter or any other law relating to the immigration or expulsion of aliens, shall be guilty of a felony * * *." 8 U.S.C. § 1324(a) (2).

son, *knowing that he* (the alien) *is in the United States in violation of law;* and knowing or having reasonable grounds to believe that his last entry * * * occurred less than three years prior thereto * * *." (Emphasis supplied).

Upon reflection, and after having given careful consideration to the motion for new trial, which complains, among other things, of the Court's actions in overruling the motions for judgment of acquittal, the conclusion is now reached that the motion for judgment of acquittal should have been granted at the close of the government's case, because the government failed to prove that the defendant knew the alien was in the United States illegally. Actually, the evidence is to the contrary.

In the case of United States v. Orejel-Tejeda, 194 F.Supp. 140 (N.D.Cal. 1961), the defendant was indicted for unlawful transportation of aliens in violation of Section 1324. The aliens were lawfully admitted to a particular area to work, but the defendant with full knowledge of the facts, undertook to transport them for profit to another area 500 miles away, where they were not authorized to work. The Court held that the defendant was not guilty, in spite of his knowledge that the aliens were not authorized to work in the area to which they were to be transported, because they had been legally admitted to work in the area from which they were transported.

The government during the trial of this case, referred the Court to two cases decided in the United States District Court for the Southern District of Texas, neither of which, in this Court's opinion, applies here.

In United States v. Ismael Rivas Gomez (Criminal No. 40395, S.D.Tex., Browns-

ville Division, February 14, 1957), Judge James V. Allred, in an unpublished opinion, found the defendant guilty of violating 8 U.S.C. § 1324(a) (4).[2] The facts reflected that the alien woman had a non-resident alien's border crossing identification card permitting temporary admission to the United States, but prohibiting work in this country. Defendant was aware of the fact that the holder would have to depart from the United States within 72 hours after entry, but he communicated an offer of employment to the alien while she was in Mexico, which offer she accepted. The alien and the defendant then proceeded by bus from Reynosa, Mexico to Hidalgo, Texas. In coming into the United States, the alien exhibited her border crossing card but did not disclose the facts concerning her acceptance of employment. Defendant knew this but kept quiet and continued by bus with the alien to McAllen, where he introduced the alien to the employer, and the alien entered upon her duties as a maid. The Court held that "since defendant knowingly encouraged the alien to make the particular entry in question, with knowledge of the alien's purpose in coming into the United States, and with knowledge that such facts were not to be disclosed, he is guilty under the statute."

In the consolidated cases of United States v. Villarreal and United States v. Toro (Criminal Nos. 18298 and 18374, respectively, S.D.Tex. Laredo Division, January 17, 1963), Judge Ben C. Connally, also in an unpublished opinion, found the defendants guilty of violating 8 U. S.C. § 1324(a) (2) and § 1324(a) (4). Each of the aliens involved in the two cases entered the United States to work. Each held a non-resident alien border crossing card. The application for each said card specifically recited that the holder was not permitted to engage in

2. "(a) any person * * * who * * * (4) willfully or knowingly encourages or induces, or attempts to encourage or induce, either directly or indirectly, the entry into the United States of any alien, * * * not duly admitted by an immigration officer or not lawfully entitled to

enter or reside within the United States under the terms of this chapter or any other law relating to the immigration or expulsion of aliens, shall be guilty of a felony * * *." 8 U.S.C. § 1324(a) (4).

any employment while in the United States. In *Toro* the defendants, who were masonry contractors from San Antonio, Texas, went to Nuevo Laredo, Mexico to look for masons, and encouraged and induced the aliens involved to enter the United States for the purpose of working for them. Upon arrival at San Antonio, the aliens went to work for the defendants as they had planned. In *Villarreal*, the defendant took two groups of aliens from Laredo, Texas, to work in Pep, Texas. The defendant was found guilty under Section 1324(a) (4) of encouraging and inducing-the several aliens in the first group to enter the United States by his promises of employment, and he was found guilty under Section 1324(a) (2) of transporting the second group. Upon arrival at Pep, Texas, the defendant "hired the aliens' labor to a farmer." The aliens themselves had no contact with the farmer, but worked for and received their pay from the defendant.

The cases relied upon by the government involved, for the most part, aliens who had been encouraged and induced by the defendants to enter the United States for the purpose of employment,[3] while, in the instant case, the alien came into the United States with a valid entry permit, after which he sought the assistance of the defendant, who undertook to transport him to Lubbock for the purpose of seeking employment; and although the defendant then knew that the alien was not authorized to work in this country, there had been no showing when

3. In the Villarreal case, however, even though the defendant was convicted on the "inducing" counts involving the first group of aliens, he was acquitted on similar counts involving the second group. With respect to the counts upon which the defendant was acquitted, the Court was, nevertheless, apparently able to impute to the defendant "full knowledge" that the entry of each alien was "illegal from its inception". Title 8 U.S.C. § 1324, of course, requires knowledge on the part of the defendant that the alien was in the United States in violation of law. Bland v. United States, 229 F.2d 105 (5th Cir. 1962). The defendant here was not

the government closed its case, that the defendant also knew the alien had entered the United States looking for a job.

In view of the foregoing, it is ordered, adjudged and decreed by the Court that defendant's motion be and it is hereby granted as follows:

(1) The finding of guilty heretofore entered by the Court in this cause is hereby set aside.

(2) The motion for judgment of acquittal made at the close of the government's case is hereby granted.

(3) The Court finds the defendant not guilty.

(4) The defendant is discharged from custody.

charged with aiding, abetting, inducing or encouraging the alien, and there was no proof that he had done so. Moreover, the record made up to the time the government closed its case does not otherwise justify imputing to the defendant knowledge that the alien had entered this country to work in violation of his entry permit. Reyes v. Neely, 228 F.2d 609 (5th Cir. 1956), cited by Judge Connally, where the defendant admittedly "aided, abetted and encouraged the aliens to enter the United States to work therein, when he knew their cards were not valid for such purpose", is distinguishable from the instant case.